**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Pablo A. Salcedo, | Civil Action No. |
| Plaintiff, | |
| v. | Before the Honorable |
| | _____ |
| Penn State Health Milton S. Hershey Medical Center, | Jury Trial Demanded |
| Defendant, | |

**FEDERAL COMPLAINT**

## INTRODUCTION

Plaintiff, Pablo A. Salcedo, by and through his attorneys, TRIQUETRA LAW, brings this Complaint against Defendant, Penn State Health Milton S. Hershey Medical Center ("the Medical Center"), because the Medical Center terminated him from his first year of medical residency, resulting in a withdrawal of his 2d, 3d, and 4th years residency placements. The Medical Center also refused to honor Dr. Salcedo's request for accommodation. Dr. Salcedo suffered serious harm as a result of the Medical Center's actions of termination of his first-year residency and failure to provide him an accommodation. Dr. Salcedo performed his duties as a first-year intern and received appropriate reviews from most of the attending physicians he served under at the Medical Center. Following an episode where he

was exercising his right to secure help for his disability, he was placed on leave and subsequently fired from the program.  Dr. Salcedo's dream of working as a doctor was crushed by the Medical Center physicians who denied him reasonable accommodation.  Others who were not disabled but who required some sort of flexibility as first year interns were granted help.  Furthermore, despite the Medical Center's failure to engage in the interactive process, at no time did the Medical Center physicians or leadership indicate reducing Dr. Salcedo's hours would place an undue burden on the Medical Center.  Dr. Salcedo would have succeeded in his medical residency but for the discriminatory acts of those in charge of the Medical Center teaching program.

The Medical Center is a teaching facility and secures federal funding to place its interns and residents.  This action is brought pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. (ADA), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, (Rehabilitation Act), and the Pennsylvania Human Relations Act, 43 P.A. 951 *et seq.* (PHRA).

## JURISDICTION

1.The jurisdiction of this Court over Counts I, II, and III of this controversy is based upon federal question jurisdiction pursuant to 28 U.S.C. § 1331 in that this District Court has original jurisdiction of all civil actions arising under the laws of the United States.

2. The federal law to be enforced in Counts I and II is the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*.

3. The federal law to be enforced in Count III is Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794.

4. The jurisdiction of this Court over Counts IV & V of this controversy is based on supplemental jurisdiction pursuant to 28 U.S.C § 1367(a).

5. The law to be enforced in Counts IV & V is the Pennsylvania Human Relations Act ("PHRA"), 43 P.S § 951 *et seq*.

## VENUE

6. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b) in that a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## PARTIES AND AGENTS

7. Plaintiff Pablo Salcedo ("Dr. Salcedo", "Plaintiff" or "Plaintiff Salcedo") is an adult citizen, former resident of Pennsylvania, who now resides in Washington D.C.

8. Defendant Penn State Health Milton S. Hershey Medical Center ("Medical Center" or "Defendant"), together with Penn State Children's Hospital, are Penn State's medical school and academic medical center.

9. The Medical Center's place of business is 500 University Dr, Hershey, PA 17033.

10. The Medical Center is an employer within the meaning of the Americans with Disabilities Act (ADA), 42. U.S.C. § 12111(5)(A).

11. The Medical Center receives federal funds to pay its medical residents while educating them.

12. The Medical Center is a program or activity receiving federal financial assistance within the meaning of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§794(a), & (b)(2).

13. Dr. Salcedo was employed and paid by the Medical Center from approximately July 1, 2017 through March 19, 2018. ("Dr. Salcedo's period of employment").

14. Dr. Nicole Swallow was the Program Director, Internal Medicine Residency of Defendant and a member of the Clinical Competency Committee during Dr. Salcedo's period of employment.

15. Dr. Swallow was removed as Program Director following Dr. Salcedo's termination.

16. The Clinical Competency Committee met every Tuesday from 2:00 to 5:00p.m.

17. Dr. Swallow was in charge of scheduling Dr. Salcedo's weekly work schedule and rotations.

18. Dr. Britt Marshall was Dr. Salcedo's primary care physician and a member of the Clinical Competency Committee.

19. Dr. Kogut was a member of the Clinical Competency Committee.

20. Dr. Ghahramani was the Chair of the Clinical Competency Committee.

21. Dr. Ami Dewaters was a member of the Clinical Competency Committee.

22. Dr. Ashley Snyder evaluated Dr. Salcedo.

23. Drs. Swallow, Marshall, Kogut, Ghahramani, Dewaters, and Snyder acted as agents of Defendant Medical Center while Defendant Medical Center employed Plaintiff Salcedo.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

24. In order to exhaust claims under the ADA, Dr. Salcedo filed his charge with the EEOC within 300 days of termination from the program.

25. On March 19, 2018, Plaintiff Salcedo was handed a termination letter dated March 6, 2018.

26. Three hundred days following March 19, 2018 is January 13, 2019.

27. In order to exhaust claims under Pennsylvania State law, Dr. Salcedo had to file a charge and request dual filing no later than September 17, 2018.

28. Dr. Salcedo filed an EEOC Charge and requested dual filing on September 5, 2018.

29. Dr. Salcedo filed his charges within a timely manner pursuant to state and federal law.

30. More than a year passed since Dr. Salcedo first filed his charge with the EEOC.

31. The EEOC issued a notice of right to sue on October 2, 2019.

32. Dr. Salcedo had 90 days to file his complaint, which is December 31, 2019.

33. Dr. Salcedo filed this Complaint within the 90 days required.

## FACTUAL ALLEGATIONS

34. The Medical Center employs more than 500 employees for each working day during each of 20 or more calendar weeks in the current or preceding calendar year.

35. The Medical Center is a medical teaching facility.

36. The Medical Center received federal funds to pay its student doctors beginning with their first year of residency during the relevant times alleged in this complaint.

### PLAINTIFF IS A DISABLED PERSON WITHIN THE MEANING OF THE ADA

37. Plaintiff Salcedo has a mental health condition of anxiety and depressive disorder.

38. Plaintiff Salcedo's disability substantially limits his ability to sleep, eat, and concentrate.

39. Plaintiff's disability sometimes limits his ability to calm himself.

40. Plaintiff Salcedo has had this disability his whole life.

41. Despite having this chronic condition, Plaintiff Salcedo has been successful in his academic and social life because he learned to manage it.

### PLAINTIFF IS QUALIFIED TO PERFORM THE ESSENTIAL FUNCTIONS OF THE JOB, WITH A REASONABLE ACCOMMODATION

42. Dr. Salcedo completed a rigorous medical school program and was matched to the Medical Center to complete his residency as a medical doctor.

43. He was a member of a class of four doctors scheduled to complete their Physical Medicine & Rehabilitation ("PM&R") residency in 2021.

44. The other members of the PM&R 2021 residency class were Dr. Aliya Jafri, Dr. Renuka Rudra, and Dr. Samantha Willer.

45. Upon accepting the residency placement, Dr. Salcedo signed a Resident Agreement, which provided for, among other obligations, an education and evaluation of Dr. Salcedo's core competencies, financial support, renewal and non-renewal of the agreement, a grievance procedure, leave for medical and family needs as well as vacation, personal leave, and duty hours.

46. Paragraph 12 of the agreement describes maximum duty hours and states, "The Program Director is responsible for the appropriate scheduling of duty time, including provision of adequate off-duty hours."

**PLAINTIFF REQUESTED AN ACCOMMODATION ON MULTIPLE OCCASIONS**

47. Soon after starting his internship in July of 2017, Plaintiff requested reasonable accommodations from the three Chief Residents: Dr. James Kogut, Dr. Simrajit Bedi, and Dr. Britt Marshall ("Chief Residents").

48. On or about late August 2017, Dr. Salcedo requested permission: a) for a quiet space in which to take notes; b) to meet with colleagues in advance; c) to sit during Rounds; and d) to meet with his healthcare provider monthly.

49. The three Chief Residents agreed that the requests were reasonable.

50. After a month without accommodation, on approximately August 19, 2017, Plaintiff contacted the Medical Center human resource office and requested accommodation paperwork.

51. On or about August 24, 2017, Dr. Salcedo met with all three Chief Residents at 7:00 am to discuss disability and request for accommodation implementation.

52. On August 25, 2017, Dr. Salcedo met with his primary care physician, Dr. Britt Marshall, and reiterated his need for an accommodation.

53. On August 26, 2017, Dr. Salcedo has a follow up meeting with Dr. Kogut to discuss his previous request for accommodation.

54. On August 28, 2017, Dr. Salcedo went to his treating psychiatrist, Dr. Muñoz, and secured a written letter with two specific requests for accommodation:

 1) "Assignment to less stressful rotations when possible," and

 2) "Assignment to rotations which allow for adequate sleep and time off on weekend when possible."

55. On or about August 30, 2017, Dr. Salcedo gave Dr. Swallow the accommodation request form as well as the accommodation letter from Dr. Muñoz.

56. Dr. Swallow indicated to Dr. Salcedo that the accommodation requests from Dr. Muñoz in the letter were reasonable.

57. However, Dr. Swallow did not make modifications to Dr. Salcedo's schedule to implement the requested accommodations.

58. The afore alleged meetings happened quickly and close together as the next major rotation was about to start for Dr. Salcedo and he wanted to have his disability needs addressed and confirmed before the rotation.

59. On October 30, 2017, Dr. Salcedo again emailed Dr. Swallow to request a meeting to discuss his requested accommodations.

60. Despite his efforts to secure an accommodation and fewer and less erratic hours on duty, Dr. Swallow, continued to schedule Dr. Salcedo 78 to 80 or more hours per week before and after his requests for accommodation.

61. As a result of not securing an accommodation, Dr. Salcedo's disability exacerbated his ability to sleep and secure adequate rest for work rotations.

62. During late November and early December 2017, Dr. Salecdo sought medical assistance to help him sleep.

63. On December 6, 2017, as a result of taking the sleep aid, Dr. Salcedo experienced side effects that impaired him temporarily and he reported this to Dr. Swallow.

64. On December 7, 2017, Dr. Swallow met with Dr. Salcedo and did not discuss Dr. Salcedo's request for accommodation.

65. On December 7, 2017, Dr. Swallow directed Dr. Salcedo to secure a fitness for duty assessment prior to returning to work.

66. On December 7, 2017, Dr. Swallow directed Dr. Salcedo to secure his fitness for duty assessments with a medical provider unconnected to the Penn State Medical Center system.

67. On December 11, 2017, Michelle Batz, LCSW released Dr. Salcedo to return to full duty on December 11, 2017.

68. On December 11, 2017, Dr. Muñoz assessed Dr. Salcedo and indicated he was fit for duty and could return to "full duty work" on 12/12/2017.

69. On December 12, 2017, Timothy Sullivan, a Physician Assistant, assessed Dr. Salcedo because Dr. Salcedo was not allowed to use a medical provider

unconnected to the Penn State Medical Center system, even if that was his preference.

70.  Timothy Sullivan found that Dr. Salcedo was "stable from a medical perspective to return to work without any specific restrictions."

71.  Timothy Sullivan also noted the need for "adequate sleep hygiene."

72.  Dr. Salcedo returned to work and Dr. Swallow continued to schedule him for 80 or more hours per work week through the end of February 2018.

73.  On December 14, 2017, Dr. Swallow issued Dr. Salcedo a remediation plan, which was issued as a Clinical Competency Committee Follow up.

74.  On December 14, 2017, Dr. Salcedo again requested accommodations, including restructuring work hours to allow him appropriate sleep (#54), sit down rounds, meeting his new attendings prior to new rotations so that he could setting up expectations and adequately prepare.

75.  On December 14, 2017, Dr. Salcedo told Dr. Swallow that he was very concerned that his health was being negatively impacted by not being accommodated.

76.  During the December 14, 2017 meeting with Dr. Swallow, she told Dr. Salcedo that she understood.

77. During the December 14, 2017 Dr Salcedo told Dr. Swallow that his performance feedback was positive up until that point, and he felt that the remediation seemed like a punishment.

78. Dr. Swallow responded that the remediation plan "was not punitive and happens all the time."

79. The remediation plan did not address Dr. Salcedo's requests for accommodation.

80. The Medical Center has a Remediation Procedure and Policy that sets forth the actions the Clinical Competency Committee may take when a resident is not meeting the milestones for success.

81. The remediation plan called for observations and submission of progress notes from medical resident rotation blocks 13 through 18, which would end February 23, 2018.

82. On February 9, 2018, Dr. Gonzalo met with Dr. Salcedo for an assessment.

83. According to the 2/9/2018 notes from the assessment with Dr. Gonzalo, he concluded Dr. Salcedo has depression and anxiety and that it may be impacting his routine and working processes.

84. On February 23, 2018, Dr. Ashley Snyder wrote an email to the Chief Residents, describing Dr. Salcedo during a shift she was serving as an attending physician, wherein Dr. Salcedo had to leave the hospital because of a reaction to

this depression and anxiety and he removed himself from the workplace before his shift was completed.

85. On February 24, 2018, Dr. Salcedo met with Dr. Kogut to discuss his need for accommodation and the negative impact working so many hours had on his ability to cope with his depression and anxiety.

86. Dr. Salcedo explained that he did not have non-working hours available to attend an appointment for his medical or mental health treatment needs because of his assigned heavy work schedule.

87. Dr. Salcedo waited patiently until his replacement came to cover for him.

88. On February 26, 2018, Dr. Swallow again issued a requirement for Dr. Salcedo to obtain a fitness for duty assessment.

89. On February 27, 2018, Dr. Muñoz issued a fitness for duty release and also specifically requested reduced workweeks for Dr. Salcedo.

90. On February 27, 2018, Dr. Swallow called Dr. Muñoz and discussed Dr. Salcedo's treatment and symptoms.

91. Dr. Swallow made this call to Dr. Muñoz, without Dr. Salcedo's permission or knowledge.

92. Dr. Swallow told Dr. Muñoz that Dr. Swallow had only scheduled Dr. Salcedo for 60 hours a week and for a rotation that allowed him to sleep.

93. Dr. Swallow's statement to Dr. Muñoz indicates her knowledge and awareness of Dr. Salcedo's need for sleep and few hours as an accommodation.

94. The work schedules never reflected a reduction in hours or a rotation assignment that permitted Dr. Salcedo to sleep.

95. On February 28, 2018, Dr. Munyon communicated to Dr. Salcedo on behalf of the Clinical Competency Committee, "[W]e received a letter from your psychiatrist, Dr. Muñoz, and we will be discussing the results next week."

96. The Clinical Competency Committee knew or should have known about the February 27, 2018 request for reduced hours as an accommodation.

97. The Clinical Competency Committee met on March 6, 2018 and decided to terminate Dr. Salcedo from the Medical Center residency program.

98. The meeting notes from the Clinical Competency Committee meeting on March 6, 2018 indicate they considered Dr. Salcedo's disability a personal issue and a disability that required an accommodation.

99. On March 19, 2018, Dr. Swallow and Dr. Ghahramani gave Dr. Salcedo the termination letter dated March 6, 2018.

100. Dr. Salcedo was terminated despite receiving consistent positive reviews from his attending physicians up until April 4, 2018.

101. On April 11, 2018, Dr. Salcedo filed an appeal of the decision and secured and attorney.

102. Following Dr. Salcedo's actions to oppose the wrongful termination by the secured attorney, Dr. Ashley Snyder submitted an "outlier" evaluation that in addition to being false, was filed late and contrary to the policies and procedures required of attending physicians' assessments of residents.

**JURY DEMAND**
**PLAINTIFF DEMANDS A TRIAL BY JURY OF ALL ISSUES HEREIN**

**CAUSES OF ACTION**

**COUNT ONE**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
**TERMINATION BECAUSE OF A DISABILITY(ADA)**
**42 U.S.C. § 12101 ET SEQ.**

**SALCEDO V. PENN STATE HEALTH MILTON S. HERSHEY MEDICAL CENTER**

103. The preceding paragraphs are incorporated by reference as if set forth in their entirety.

104. Plaintiff is a disabled individual, who is able to work as a medical resident at the Medical Center with reasonable accommodation.

105. Plaintiff is qualified to perform the essential functions of a medical resident for the Medical Center.

106. Plaintiff was terminated from the program because of his disability, record of disability or perceived disability. he is a disabled person.

107. Defendant acted with malice or reckless indifference in terminating Plaintiff, justifying an award of punitive damages under the ADA.

## COUNT TWO
### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### FAILURE TO ACCOMMODATE (ADA)
### 42 U.S.C. § 12101 *ET SEQ.*
### SALCEDO V. PENN STATE HEALTH MILTON S. HERSHEY MEDICAL CENTER

108. The preceding paragraphs are incorporated by reference as if set forth in their entirety.

109. Plaintiff is a disabled individual within the meaning of the ADA.

110. Plaintiff is qualified to perform the essential functions of a medical resident for the Medical Center.

111. Requesting an accommodation is protected activity under the American's with Disabilities Act.

112. Plaintiff could have been reasonably accommodated by Defendant.

113. Defendant failed to accommodate Plaintiff by refusing to implement the reasonable accommodation requests sought by Plaintiff.

## COUNT THREE
### VIOLATION OF SECTION 504 THE REHABILITATION ACT OF 1973
### 29 U.S.C. § 794
### SALCEDO V. PENN STATE HEALTH MILTON S. HERSHEY MEDICAL CENTER

114. The preceding paragraphs are incorporated by reference as if set forth in their entirety.

115. Plaintiff is a disabled individual, who is able to work with an accommodation.

116. Plaintiff is qualified to perform the essential functions of a medical resident for the Medical Center.

117. Plaintiff was terminated from the program because he is a disabled person.

118. Defendant failed to provide Plaintiff with a reasonable accommodation.

**COUNT FOUR**
**VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT**
**TERMINATION BECAUSE OF A DISABILITY**
**43 P.S § 951 *ET SEQ.***
**SALCEDO V. PENN STATE HEALTH MILTON S. HERSHEY MEDICAL CENTER**

119. The preceding paragraphs are incorporated by reference as if set forth in their entirety.

120. Plaintiff is a disabled individual, who is able to work with an accommodation.

121. Plaintiff is qualified to perform the essential functions of a medical resident for the Medical Center.

122. Plaintiff was terminated from the program because his disability, record of disability or perceived disability.

123. Defendant failed to provide Plaintiff with a reasonable accommodation.

**COUNT FIVE**
**VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT**
**FAILURE TO ACCOMMODATE**
**43 P.S § 951 *ET SEQ.***
**SALCEDO V. PENN STATE HEALTH MILTON S. HERSHEY MEDICAL CENTER**

124. The preceding paragraphs are incorporated by reference as if set forth in their entirety.

125. Plaintiff is a disabled individual within the meaning of the PHRA.

126. Plaintiff is qualified to perform the essential functions of a medical resident for the Medical Center.

127. Requesting an accommodation is protected activity under the Pennsylvania Human Relations Act.

128. Plaintiff could have been reasonably accommodated by Defendant.

129. Defendant failed to accommodate Plaintiff by refusing to implement the reasonable accommodation requests sought by Plaintiff.

**WHEREFORE, PLAINTIFF RESPECTFULLY PRAYS FOR JUDGMENT AGAINST DEFENDANT PENN STATE HEALTH MILTON S. HERSHEY MEDICAL CENTER AS FOLLOWS:**

a. For a declaratory judgment that Defendant's actions complained of herein violate the ADA, the PHRA and the Rehabilitation Act of 1973, 29 U.S.C. §794;

b. For injunctive and equitable relief prohibiting Defendant from engaging in discriminatory practices;

c. For a money judgment including monetary damages, including back pay and benefits and front pay and benefits;

d. For a money judgment including monetary damages for compensatory damages for the violations of the ADA, the PHRA and the Rehabilitation Act of 1973, 29 U.S.C. 794;

e. For a money judgment including punitive damages for violations of the ADA;

f. For pre-judgment interest;

g. For reasonable attorneys' fees, expert witness fees, and the costs and expenses of this litigation; and

h. For such other legal and equitable relief as the Court may deem just and proper.

Dated: December 23, 2019

⚭ TRIQUETRA LAW ®
Respectfully submitted,

_____
Sharon R. López
PA ID 70605
Counsel for the Plaintiff
Dr. Pablo Salcedo
35 East Orange Street, Suite 301
Lancaster, PA  17602
(717)  299-6300 (Telephone)
(717)  299-6338 (Fax)
Lopez@TriquetraLaw.com