IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PABLO A. SALCEDO, :
**Plaintiff** :
: No. 1:19-cv-02201
v. :
: (Judge Kane)
THE MILTON S. HERSHEY MEDICAL :
CENTER, :
**Defendant** :

**MEMORANDUM**

Before the Court is Plaintiff Pablo Salcedo ("Plaintiff")'s motion for leave to file an amended complaint to add additional claims. (Doc. No. 19.) For the reasons that follow, Plaintiff's motion will be denied.

**I.     BACKGROUND**

**A.     Procedural Background**

Plaintiff initiated the above-captioned action on December 23, 2019 by filing a complaint in this Court asserting claims of disability discrimination in violation of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1973 ("RA") as well as pendant state claims pursuant to the Pennsylvania Human Relations Act ("PHRA"). (Doc. No. 1.) Defendant the Milton S. Hershey Medical Center ("Defendant" or "the Medical Center") filed an answer to the complaint on February 24, 2020. (Doc. No. 7.) The Court subsequently held a case management conference with the parties during which the Court set a close of fact discovery date of December 31, 2020.[1] (Doc. Nos. 10, 11.) On May 26, 2020, Plaintiff filed a motion to

---

[1] The above-captioned action was selected for mandatory referral to mediation in accordance with Standing Order 04-3 of this Court. (Doc. No. 8.) The parties indicated at the case management conference that they were unprepared to participate in mediation at that time and that they would inform the Court when they were prepared to do so. (Doc. No. 10.)

amend/correct the caption of the complaint to properly name Defendant, which the Court granted on June 3, 2020.[2] (Doc. Nos. 12, 13.)

On December 29, 2020, the parties jointly filed a motion for an extension of time to complete discovery, asserting that the extension was necessary to accommodate "scheduling difficulties and the new phase of the [COVID-19] pandemic." (Doc. No. 17.) The Court granted the requested extension and issued a new close of fact discovery date of June 30, 2021. (Doc. No. 18.) Subsequently, Plaintiff filed a motion to amend/correct the complaint to add three new claims for breach of contract. (Doc. No. 19.) Plaintiff filed a brief in support of the motion on March 9, 2021. (Doc. No. 20.) Defendant filed a brief in opposition on March 23, 2021. (Doc. No. 23.) Finally, Plaintiff filed a reply brief on April 5, 2021. (Doc. No. 24.) Accordingly, having been fully briefed (Doc. Nos. 20, 23, 24), the motion is ripe for disposition.

**B.      Factual Background** [3]

Plaintiff is a medical school graduate who was "matched to the Medical Center to complete his residency as a medical doctor." (Doc. No. 19-1 ¶ 43.) Plaintiff's placement was confirmed through a written employment contract entitled "Resident Agreement of Appointment" ("Agreement"), which was signed by Plaintiff. (Id. ¶¶ 46, 133.) The Agreement had a one-year term subject to renewal, with an initial term of July 1, 2017 through June 30, 2018. (Id. ¶ 134.)

Plaintiff alleges that he is a disabled person within the meaning of the ADA because he suffers from a chronic "mental health condition of anxiety and depressive disorder." (Id. ¶¶ 38,

---

[2] Plaintiff initially identified Defendant as the "Penn State Health Milton S. Hershey Medical Center." (Doc. No. 1.)

[3] The following factual background is taken from the allegations of Plaintiff's proposed amended complaint. (Doc. No. 19-1.)

42.) This disability disrupts Plaintiff's everyday life by limiting "his ability to sleep, eat, and concentrate." (Id. ¶ 39.)

After Plaintiff began his residency, he alleges that he sought accommodations for his disability at work. (Id. ¶ 48.) In August 2017, Plaintiff pursued accommodations by contacting "the Medical Center human resource office and request[ing] accommodation paperwork," and later meeting with three Chief Residents "to discuss [Plaintiff's] disability and request for accommodation implementation." (Id. ¶¶ 49-50.) The accommodations Plaintiff sought were: "a) for a quiet space in which to take notes; b) to meet with colleagues in advance; c) to sit during Rounds; and d) to meet with his healthcare provider monthly." (Id. ¶ 51.) Plaintiff alleges that the Chief Residents he met with found these accommodation requests "reasonable." (Id. ¶ 52.) Later that month Plaintiff met with his treating psychiatrist, Dr. Munoz, who gave Plaintiff a letter containing two further requests for accommodation: "1) assignment to less stressful rotations when possible, and 2) [a]ssignment to rotations which allow for adequate sleep and time off on weekend when possible." (Id. ¶ 55.) (internal quotation marks omitted). On or about August 30, 2017, Plaintiff gave Dr. Swallow, the Program Director of the Internal Medicine Residency at the Medical Center, an accommodation request form and the accommodation letter from Dr. Munoz. (Id. ¶ 56.) Plaintiff alleges that although Dr. Swallow "indicated to [Plaintiff] that the accommodation requests" were "reasonable," Dr. Swallow made no "modifications to [Plaintiff's] schedule to implement the requested accommodations" following the request. (Id. ¶¶ 57-58.)

In October 2017, Plaintiff again contacted Dr. Swallow requesting accommodations. (Id. ¶ 60.) Plaintiff alleges that despite repeated requests he continued to be scheduled for 78 to 80 hours of work per week. (Id. ¶ 61.) Plaintiff alleges that because his unaccommodated schedule "exacerbated his ability to sleep and secure adequate rest," he began to take medication in order to

3

sleep. (Id. ¶ 63.) On December 6, 2017, Plaintiff experienced impairing side effects from the sleep medication and reported those side effects to Dr. Swallow. (Id. ¶¶ 63-64.) Dr. Swallow met with Plaintiff about these side effects the next day and directed Plaintiff to "secure a fitness for duty assessment prior to returning to work." (Id. ¶¶ 65-66.) Plaintiff was cleared to come back to work for "full duty work" on December 11, 2017. (Id. ¶ 69.) On December 14, 2017, Dr. Swallow initiated a "remediation plan" for Plaintiff, which would monitor and evaluate Plaintiff's performance through February 23, 2018. (Id. ¶¶ 74, 82.) The "remediation plan" was overseen by a Clinical Competency Committee, which has the authority to take action "when a resident is not meeting the milestones for success." (Id. ¶ 81.) On February 23, 2018, another doctor alerted Chief Residents that Plaintiff left the hospital abruptly during a shift. (Id. ¶ 85.) Plaintiff alleges he left "because of a reaction to [] depression and anxiety." (Id.) Following this incident, Dr. Swallow again required Plaintiff to "obtain a fitness for duty assessment" before returning to work. (Id. ¶ 89.) Plaintiff obtained the fitness for duty release the next day from his psychiatrist Dr. Munoz. (Id. ¶ 90.) On March 6, 2018, the Clinical Competency Committee met and "decided to terminate [Plaintiff] from the Medical Center residency program." (Id. ¶ 98.) On March 19, 2018, Plaintiff received a termination latter dated March 6, 2018, which Plaintiff alleges was his first written notice of "intent to dismiss him from the program." (Id. ¶ 101.)

Plaintiff alleges that he "was employed and paid by the Medical Center from approximately July 1, 2017 through March 19, 2018." (Id. ¶ 14.) Plaintiff appealed the decision to terminate his employment on April 11, 2018. (Id. ¶ 103.) Plaintiff pursued administrative remedies under both the ADA and the PHRA by filing dual charges with the EEOC on September 5, 2018. (Id. ¶¶ 25-29.) On October 2, 2019, "the EEOC issued [Plaintiff] a notice of right to sue," and Plaintiff subsequently filed his original complaint with this Court. (Id. ¶¶ 32-34.)

4

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 15(a) usually governs requests for the amendment of pleadings and instructs that leave to amend should be freely given "when justice so requires." See Fed. R. Civ. P. 15(a)(2). Within the Third Circuit, leave to amend "must generally be granted unless equitable considerations render it otherwise unjust." See Arthur v. Maersk, Inc., 434 F.3d 196, 204 (3d Cir. 2006). However, a court may deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." See Foman v. Davis, 371 U.S. 178, 182 (1962). A pleading is futile if, as amended, it fails to state a claim upon which relief may be granted. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). In order to determine whether an amendment is futile, a district court applies the standard of legal sufficiency applied under Federal Rule of Civil Procedure 12(b)(6).[4] See id. Accordingly, when assessing the potential futility of a proposed amended complaint, the Court must accept as true the allegations in the proposed amended complaint and consider those allegations in the light most favorable to the party seeking leave to amend. See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).

---

[4] The United States Court of Appeals for the Third Circuit has identified three steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F. 3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

## III. DISCUSSION

### A. Applicable Legal Standard

Count Six of Plaintiff's proposed amended complaint asserts a breach of contract claim against Defendant for express breach of paragraphs 6 and 7 of the Agreement. (Doc. 19-1 ¶¶ 139-40.)[5] Plaintiff specifically alleges that Defendant's failure to accommodate Plaintiff's disability breached paragraph 6 of the Agreement and Defendant's failure to give prior written notice of termination, nonrenewal, and non-promotion breached paragraph 7 of the Agreement. (Id. ¶ 139-40.) Under Pennsylvania law,[6] "a cause of action for breach of contract must be established by pleading (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages." See Key Consol. 2000, Inc. v. Troost, 432 F. Supp. 2d 484, 487 (M.D. Pa. 2006) (citing Corestates Bank N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).

---

[5] Counts 7 and 8 of Plaintiff's proposed amended complaint assert claims against Defendant for breaches of the implied covenants of good faith and fair dealing. (Doc. No. 19-1 at 21-23.) These claims arise out of the same Agreement as the breach of contract claim in Count 6. (Id.) However, "[u]nder Pennsylvania law, a claim for breach of the implied covenant of good faith and fair dealing is subsumed in a breach of contract claim." See Davis v. Wells Fargo, 824 F.3d 333, 352 (3d Cir. 2016) (quoting Burton v. Teleflex Inc., 707 F.3d 417, 432 (3d Circ. 2013); LSI Title Agency, Inc. v. Evaluations Servs., Inc., 951 A.2d 384, 392 (Pa. Super. Ct. 2008)) (internal quotation marks omitted). Plaintiff therefore cannot "maintain an independent cause of action for breach of the covenant of good faith and fair dealing under Pennsylvania law" absent a sufficiently pleaded breach of contract claim. See Davis, 824 F.3d at 352. Accordingly, the Court first considers the breach of contract claim alleged in Count 6.

[6] Because the Court has jurisdiction based on supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), because the Agreement specifies Pennsylvania law applies to its provisions, and because neither party has argued that Pennsylvania law does not govern the Agreement, the Court applies substantive Pennsylvania contract law to its review of this claim.

B.   **Arguments of the Parties**

Defendant argues that Count 6 of Plaintiff's proposed amended complaint fails to plead a prima facie breach of contract claim. (Doc. No. 23 at 10.) Defendant does not dispute that the Agreement is a valid contract governing Plaintiff's employment at the Medical Center. Defendant instead argues that Plaintiff "failed to allege facts showing a 'breach of a duty imposed by the contract'" in paragraph 6 of the Agreement or "damages caused by the alleged breach" of paragraph 7 of the Agreement. (Id. at 10.) Defendant maintains that Plaintiff's claim of breach based on paragraph 6 of the Agreement relies on a duty to accommodate that is not expressly imposed by the Agreement. (Id. at 11.) In response, Plaintiff argues that Defendant breached paragraph 6 of the Agreement by failing to renew the Agreement based on the ACGME core competencies. (Doc. No. 24 at 7.) Plaintiff argues that paragraph 6 imposes on Defendant an affirmative duty to renew based on the ACGME standards. (Id.)

Defendant additionally argues that Plaintiff's claim of breach based on paragraph 7 of the Agreement fails to state a claim for breach because there are no damages caused by this breach. (Doc. No. 23 at 11.) Plaintiff alleges Defendant's failure to give written notice prior to termination constituted breach of paragraph 7 of the Agreement. (Doc. No. 19-1 ¶ 140.) Plaintiff's requested damages for its claims of breach under paragraphs 6 and 7 of the Agreement "includ[e] back pay and benefits and front pay and benefits." (Id. ¶ 141.) Plaintiff argues Defendant caused these damages by failing to give notice of termination because "[t]he notice and opportunity to seek another path of accommodation was denied." (Doc. No. 24 at 11.)

Finally, Defendant argues that Counts 7 and 8 of Plaintiff's proposed amended complaint fail because: (1) a claim for breach of the implied covenants of good faith and fair dealing cannot be maintained in the absence of a breach of contract claim; and (2) Plaintiff has nonetheless failed

to allege either a breach of contractual duty or a link between any alleged breach and damages with respect to the proposed claims. (Doc. No. 23 at 12-15.) Plaintiff argues that he has properly pleaded these claims as "a breach of contract with a contractual duty undergirding the breach of the implied covenant." (Doc. No. 24 at 9-10.)

### C. Whether the Court Should Grant Plaintiff Leave to Amend

Upon review of Plaintiff's proposed amended complaint, the parties' arguments, and the applicable law, the Court will deny Plaintiff's motion for leave to file an amended complaint to add additional claims. Plaintiff fails to plausibly allege Defendant breached duties imposed by the Agreement, making the proposed amendments futile.[7]

Plaintiff attached a copy of the Agreement to his proposed amended complaint, and neither party disputes the Agreement's authenticity. (Doc. No. 19, Exh. A.) The first element of a claim for breach of contract is therefore satisfied. However, Plaintiff fails to allege facts demonstrating that Defendant breached express terms of that Agreement.

First, Plaintiff's proposed amended complaint alleges breach of paragraph 6 of the Agreement, "Conditions for Reappointment and Promotion." Paragraph 6 provides:

> Renewal of the Resident Agreement will be based on the ACGME core competencies. Resident will be evaluated/reappointed based on patient care, medical knowledge, clinical competence, practice-based learning and improvement, interpersonal and communication skills, professionalism, systems- based practice, evaluations, ACGME Milestones and/or any other factors deemed necessary to advance to the next level in training.

(Doc. No. 19-1, Exh. A at 3.) Plaintiff alleges that Defendant breached this term when it "prevented renewal of Plaintiff's Resident Agreement by unlawfully failing to accommodate his reasonable requests for accommodation of his need for adequate sleep hygiene and off-duty

---

[7] Because the Court finds that Plaintiff's motion should be denied because the proposed amendment would be futile, the Court does not reach Defendant's additional argument that the Court should deny leave to amend on the basis of undue delay.

hours." (Doc. No. 19-1 ¶ 139.) The Court agrees with the Defendant that paragraph 6 of the Agreement imposes no express duty to grant Plaintiff's requests for accommodations, but rather governs the evaluation methods which Defendant may use to determine whether or not to renew the Agreement. Plaintiff alternatively asserts that Defendant breached this term by "failing to properly evaluate Plaintiff in accordance with the ACGME Milestones" referenced. (Doc. No. 24 at 7.) While paragraph 6 provides that ACGME Milestones should be used in determining renewal, the term specifically reserves the right to base renewal on other factors by including the phrase "and/or any other factors deemed necessary to advance to the next level in training." (Doc. No. 19-1, Exh. A at 3.) Because the ACGME Milestones are not the sole bases of renewal under the Agreement and the Agreement does not impose an affirmative duty to accommodate under this term, the Court finds that Plaintiff fails to plausibly allege a claim of breach of contract under paragraph 6 of the Agreement.[8]

Second, Plaintiff's proposed amended complaint alleges breach of paragraph 7 of the Agreement, "Promotion, Appointment Renewal and Dismissal." Paragraph 7 provides:

> All Penn State Health ACGME-accredited programs are required to have a policy to determine the criteria for promotion and/or renewal of a resident's appointment. In instances where Resident will not be promoted to the next level of training, the Resident Agreement will not be renewed, or when Resident will be dismissed the program will provide Resident with a written notice of intent. The program will provide Resident with as much written notice of intent not to renew or not to promote as circumstances will reasonably allow, prior to the end of the agreement. Upon dismissal of Resident, Resident will receive a written letter of intent.

(Doc. 19-1, Exh. A at 3.) Plaintiff alleges that Defendant breached this term when it "failed to give Plaintiff a written notice of intent not to be promoted to the next level of training, that the

---

[8] The Court similarly agrees with Defendant that Plaintiff's proposed Count 7, which also arises from the alleged breach of paragraph 6 of the Agreement, fails to adequately allege the breach of a duty imposed under the terms of the Agreement.

9

Resident Agreement would not be renewed, and that Plaintiff would be dismissed from the program." (Doc. No. 19-1 ¶ 140.) The Court agrees with Defendant that the facts Plaintiff alleges in the proposed amended complaint do not demonstrate that failure to give notice of termination resulted in any damages to Plaintiff. Plaintiff argues in briefing that had he received notice that he would be terminated, he would have gone through different, formal channels to secure accommodations and negotiated a longer leave of absence. (Doc. No. 24 at 8-11.) However, "it is axiomatic that the complaint may not be amended by the briefs . . . ." See Pennsylvania ex rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 181 (3d Cir. 1988) (internal citation omitted). Further, Plaintiff's repeated assertions that Defendant failed to accommodate his disability prior to termination do not reasonably support an inference that Defendant would have implemented new accommodations after providing notice of termination.

Finally, Plaintiff's proposed amended complaint alleges breach of contract and the implied covenants of good faith and fair dealing by failing to "maintain an environment conducive to the health and well being of [Plaintiff] in compliance with the Graduate Medical Education Maximum Hours of Clinical and Educational Work per Week Policy" as referenced in paragraph 12 of the Agreement. (Doc. No. 19-1 ¶ 149.) However, the Court agrees with Defendant that paragraph 12 of the Agreement does not impose a duty that was breached by Defendant, that Plaintiff has not alleged facts to support the allegation that Defendant breached a duty under the agreement or facts that support a causal connection between any alleged breach and damages, and that this proposed claim is merely a repetition of Plaintiff's ADA claim. Accordingly, the Court finds that it would be futile to allow Plaintiff to amend his complaint to add the proposed claims at Counts 6-8 and will deny Plaintiff leave to amend his complaint.

## IV. CONCLUSION

For the foregoing reasons, the Court will deny Plaintiff's motion for leave to file an amended complaint to add additional claims. (Doc. No. 19.) An appropriate Order follows.