**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PABLO A. SALCEDO, | : | |
| **Plaintiff** | : | **No. 1:19-cv-02201** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| MILTON S. HERSHEY MEDICAL | : | |
| CENTER, | : | |
| **Defendant** | : | |

**<u>MEMORANDUM</u>**

Before the Court is Plaintiff Pablo Salcedo ("Plaintiff")'s Motion to Compel Discovery

pursuant to Federal Rule of Civil Procedure 37 (Doc. No. 46) and Plaintiff's Motion to

Determine the Sufficiency of Defendant Milton S. Hershey Medical Center ("Defendant")'s

Answers and Objections to his requests for admissions pursuant to Federal Rule of Civil

Procedure 36 (Doc No. 47).  For the reasons that follow, the Court will grant in part and deny in

part Plaintiff's motions.

**I.    BACKGROUND[1]**

Plaintiff was one of nine "PGY-1 Preliminary Interns in [Defendant's] Internal Medicine

Residency Program in 2017-2018." [2]  (Doc. No. 48 at 9.)  Plaintiff claims that he has a disability

and that, "[f]ollowing an episode where he was exercising his right to secure help for his

disability, he was placed on leave and subsequently fired from the program."  (Id. at 1-2.)  He

maintains that Defendant failed to provide him with reasonable accommodations for his

disability, even though "[o]ther interns who were not disabled but who required some sort of

---

[1]  The following factual background is drawn from Plaintiff's complaint and the statements
provided in the parties' briefs.  This background is only intended to provide context for the
discovery dispute below.

[2]  The first year of a residency internship is commonly referred to as "PGY-1."

flexibility as first year interns were granted help."  (Id.)

Plaintiff commenced the above-captioned lawsuit on December 23, 2019, asserting claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. 951 et seq.  (Id. at 1-2, 15-19.)  On March 30, 2020, the Court held a case management conference with the parties and set a close of fact discovery date of December 31, 2020.  (Doc. Nos. 10, 11.)  On May 26, 2020, Plaintiff filed a motion to amend the caption of the complaint to properly name Defendant, which the Court granted on June 3, 2020.  (Doc. Nos. 12, 13.)  On December 29, 2020, the parties jointly filed a motion for an extension of time to complete discovery.  (Doc. No. 17.)  The Court granted the motion and set a new close of fact discovery date of June 30, 2021.  (Doc. No. 18.)

On February 23, 2021, Plaintiff filed a motion to amend its complaint in order to add additional claims against Defendant (Doc. No. 19), which the Court denied on May 14, 2021 (Doc. No. 28).  The Court subsequently granted two further extensions of time to complete discovery: first on June 3, 2021, issuing a new close of fact discovery date of January 6, 2022 (Doc. No. 30), and then on December 22, 2021, issuing a new close of fact discovery date of June 30, 2022 (Doc. No. 32).  On March 13, 2022, the parties apprised the Court of a discovery dispute regarding the discoverability of a timeline created by Plaintiff and his attorneys in preparation for his deposition.  Defendant's request to compel this discovery was denied on June 15, 2022.  (Doc. No. 38.)

On September 26, 2022, Plaintiff's counsel informed the Court of the current discovery disputes, which pertain to his requests for documents under Federal Rule of Civil Procedure 34 and requests for admissions under Federal Rule of Civil Procedure 36.  Defendant responded on

October 11, 2022, and the Court held a conference two days later, on October 13, 2022, to address the discovery disputes.  (Doc. No. 44.)  The Court then ordered Plaintiff to file a motion to compel discovery on or before November 22, 2022, and directed the Clerk of Court to docket under seal all exhibits filed in support of this motion.[3]  (Doc. No. 45.)

On November 22, 2022, Plaintiff timely filed the pending discovery motions, together with briefs in support, seeking an order compelling Defendant to produce documents, provide adequate responses to his requests for admissions, and pay the reasonable expenses incurred in connection with his motions.  (Doc. Nos. 46-48, 50.)  Defendant filed briefs in opposition to Plaintiff's motions on December 12, 2022, and similarly seeks the reasonable expenses incurred in opposing Plaintiff's motions.  (Doc. Nos. 51-52.)  Plaintiff filed reply briefs in further support of his motions on December 27, 2022.  (Doc. Nos. 54-55.)  Having been fully briefed, Plaintiff's motions are ripe for disposition.

## II.   LEGAL STANDARD

The "federal rules allow broad and liberal discovery."  See Pacitti v. Macy's, 193 F.3d 766, 777 (3d Cir. 1999); see also Donahue v. Consol. Rail Corp., 224 F.3d 226, 234 (3d Cir. 2000) (noting the "liberal discovery procedures of the Federal Rules of Civil Procedure").  Federal Rule of Civil Procedure 26(b) governs the scope of discovery, Rule 37(a) governs motions to compel discovery, Rule 36 governs requests for admissions, and Rule 37(a)(5) governs requests for expenses in connection with discovery motions.

### A.   Federal Rule of Civil Procedure 26(b)

Federal Rule of Civil Procedure 26(b)(1) defines both the scope of and limitations on

---

[3]  Because those exhibits have been docketed under seal, specific references to the record will be made by referring to the parties' briefs, which are not sealed, where possible.

discovery in a federal civil action.  Discovery is permitted if it is (1) relevant to any party's claim or defense; (2) non-privileged; and (3) proportional to the needs of the case.  See id.  Discovery is "deemed relevant 'if there is any possibility that the information may be relevant to the general subject matter of the action.'"  See Lakeview Pharmacy of Racine, Inc. v. Catamaran Corp., No. 3:15-cv-00290, 2019 WL 587296, at *2 (M.D. Pa. Feb. 13, 2019) (quoting Kegerise v. Susquehanna Twp. Sch. Dist., No. 1:14-cv-00747, 2016 WL 2736048, at *1 (M.D. Pa. May 11, 2016)).  Proportionality is determined by considering "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  See Fed. R. Civ. P. 26(b)(1).

**B.      Federal Rules of Civil Procedure 37(a)**

Federal Rule of Civil Procedure 37(a) permits a party to move for an order compelling discovery.  The moving party bears an initial burden of demonstrating that "the information sought is relevant to the subject matter of the action and may lead to admissible evidence."  See Caver v. City of Trenton, 192 F.R.D. 154, 159 (D.N.J. 2000) (citing Nestle Foods Corp. v. Aetna Cas. & Sur. Co., 135 F.R.D. 101, 105 (D.N.J. 1990)).  The burden then shifts to the objecting party to show, in specific terms, why the discovery request is improper.  See Hicks v. Big Bros./Big Sisters of Am., 168 F.R.D. 528, 529 (E.D. Pa. 1996).  The objecting party must show that the requested materials do not fall "within the broad scope of relevance . . . or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure[.]"  See Burke v. New York City Police Dep't, 115 F.R.D. 220, 224 (S.D.N.Y. 1987).  Decisions relating to the "scope and conduct of discovery are within the sound discretion of the trial court[.]"  See Marroquin-Manriquez v.

4

I.N.S., 699 F.2d 129, 134 (3d Cir. 1983).

    **C.    Federal Rule of Civil Procedure 36**

    Federal Rule of Civil Procedure 36 permits a party to "serve requests for admission upon the opposing party concerning 'statements or opinions of fact or of the application of law to fact, including the genuineness of any documents described in the request.'" See Duchesneau v. Cornell Univ., No. 08-cv-04856, 2010 WL 4117753, at *2 (E.D. Pa. Oct. 19, 2010) (quoting Creely v. Genesis Health Ventures, Inc., No. 04-cv-00679, 2005 WL 44526, at *2 (E.D. Pa. Jan. 10, 2005)).  "The purpose of Rule 36(a) is to narrow the issues for trial to those which are genuinely contested." United Coal Coms. v. Powell Const. Co., 839 F.2d 958, 967 (3d Cir. 1988) (first citing Webb v. Westinghouse Elec. Corp., 81 F.R.D. 431, 436 (E.D. Pa. 1978); and then citing United States v. Watchmakers of Switz. Info. Ctr, Inc., 25 F.R.D. 197, 201 (S.D.N.Y. 1959)).

    In response to a request for admission, a party can submit an answer or raise an objection. When responding, a party can admit the matter, deny it, or "state in detail why [the] . . . party cannot truthfully admit or deny it." See Fed. R. Civ. P. 36(a)(4).  If the party claims to lack the necessary information to admit or deny a request, it must state that it made "a reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny" the request, see id., and provide an explanation "in some detail why the request cannot be affirmed or denied," see LightStyles, Ltd., ex rel. Haller v. Marvin Lumber & Cedar Co., No. 1:13-cv-01510, 2014 WL 6982918, at *1 (M.D. Pa. Dec. 9, 2014) (first citing Panara v. Hertz Penske Truck Leasing, Inc., 122 F.R.D. 14, 17 (E.D. Pa. 1988); and then citing Moeck v. Pleasant Valley Sch. Dist., No. 13-cv-01305, 2014 WL 4446730, at *3 (M.D. Pa. Sept. 10, 2014)).  "The responding party may not make 'disingenuous, hair-splitting distinctions whose

unarticulated goal is to unfairly burden an opposing party,'" McCarthy v. Darman, No. 07-cv-03968, 2008 WL 2468694, at *4 (E.D. Pa. June 17, 2008)), and "answers that appear to be nonspecific, evasive, [or] ambiguous . . . are impermissible and must be amended," see Moeck, 2014 WL 4446730, at *5 (quoting Caruso v. Coleman Co., No. 93-cv-06733, 1995 WL 347003, at *3 (E.D. Pa. June 7, 1995)).  When objecting, a party must state "the grounds for objecting to the request," see Fed. R. Civ. P. 36(a)(5), and "the mere statement by a party that the discovery sought is overly broad, burdensome, oppressive, vague or irrelevant is not adequate to voice a successful objection," see Bolus v. Carnicella, No. 4:15-cv-01062, 2020 WL 930329, at *6 (M.D. Pa. Feb. 26, 2020) (citing Northern v. City of Phila., No. 98-cv-06517, 2000 WL 355526, at *2 (E.D. Pa. Apr. 4, 2000)).

After a party answers or objects to a request for admission, the requesting party "may move to determine the sufficiency of an answer or objection."  See Fed. R. Civ. P. 36(a)(6).  In evaluating such a motion, courts consider "(1) whether the denial fairly meets the substance of the request; (2) whether good faith requires that the denial be qualified; and (3) whether any 'qualification' which has been supplied is a good faith qualification."  See United States v. Lorenzo, No. 89-cv-06933, 1990 WL 83388, at *1 (E.D. Pa. June 14, 1990) (quoting Thalheim v. Eberheim, 124 F.R.D. 34, 35 (D. Conn. 1988)) (citing Dubin v. E.F. Hutton Group Inc., 125 F.R.D. 372, 374 (S.D.N.Y. 1989)).  "On finding that an answer does not comply with [Rule 36], the court may order either that the matter is admitted or that an amended answer be served."  Fed. R. Civ. P. 36(a)(6).  If a court concludes that an objection is not justified, "it must order that an answer be served."  See id.

## D.     Federal Rule of Civil Procedure 37(a)(5)

If a discovery motion is granted, a court must "require the party . . . whose conduct

necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's

reasonable expenses incurred in making the motion."  <u>See</u> Fed. R. Civ. P. 37(a)(5)(A).  If a

discovery motion is denied, a court must "require the movant, the attorney filing the motion, or

both to pay the party . . . who opposed the motion its reasonable expenses."  <u>See</u> Fed. R. Civ. P.

37(a)(B).  However, "[i]f the motion is granted in part and denied in part, the court <u>may</u> . . . ,

after giving an opportunity to be heard, apportion the reasonable expenses for the motion."  <u>See</u>

Fed. R. Civ. P. 37(a)(5)(B) (emphasis added).

## III.    DISCUSSION

The Court will first address Plaintiff's motion to compel discovery before turning to his

motion challenging the sufficiency of Defendant's responses to his requests for admissions.  The

Court will then consider whether either party is entitled to the reasonable expenses incurred

while litigating the pending discovery disputes.

### A.      Plaintiff's Motion to Compel Discovery

Plaintiff's motion to compel discovery pertains to Requests for Documents ("RFD") #48,

#61-62, #65, and #69-74.  (Doc. No. 46.)  Before turning to Defendant's contentions regarding

each RFD, the Court addresses two preliminary issues.  First, because the parties represent that

they resolved their dispute regarding RFD #65 (Doc. No. 55 at 20), the Court will deny

Plaintiff's motion to compel responses to RFD #65 as moot.  Second, while Defendant initially

objected to Plaintiff's requests on a number of grounds, <u>e.g.</u>, overbreadth, Defendant has only

raised some of those objections in its briefing.  The Court will accordingly limit its analysis to

the objections and arguments that Defendant has briefed.

#### 1.      RFD #48

RFD #48 requests "All History and Physical Notes, Transfer of Care Note, and Progress

Notes submitted and signed by Dr. [Snyder] relating to the patients" to which Plaintiff

purportedly "failed to respond . . . on February 23 and 24, 2018." (Doc. No. 48 at 36.) Plaintiff

asserts that this request is relevant because it could yield evidence that disproves a non-

discriminatory reason provided by Defendant for terminating his residency: his alleged

"inadequate care of patients on 2/23 and 2/24." (Id. at 36-37.) Because a key factor under the

burden-shifting framework used to analyze ADA claims is whether a defendant has a non-

discriminatory purpose for its challenged conduct, the Court concludes that Plaintiff's request is

relevant. See Fucci v. GRFAuate Hosp., 969 F. Supp. 310, 316 (E.D. Pa. 1997) (explaining that

for ADA claims, a "[p]laintiff has the initial burden of establishing a prima facie case of

employment discrimination" after which "the burden shifts to the defendant to articulate a

legitimate nondiscriminatory reason for the adverse employment decision").

Having determined that RFD #48 seeks relevant discovery, the Court turns to whether

Defendant has met its burden of showing why the request is improper. Defendant argues that it

has already "produced witnesses and documents" responsive to RFD #48 and that the patients'

medical notes sought by RFD #48 are protected from disclosure under the Health Insurance

Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. § 1320d. (Doc. No. 51 at 21-

22.) These arguments are unavailing for two reasons. First, even assuming the "witnesses and

documents" Defendant produced are relevant to RFD #48, they are not responsive to RFD #48,

which seeks patients' medical notes. In fact, none of the discovery Defendant refers to in its

briefing relates to February 24, 2018, and one of Defendant's non-discriminatory reasons for

Plaintiff's termination was his performance on February 23 and February 24 of that year.

Moreover, the existing discovery to which Defendant alludes includes a supervising doctor's

email, which only supports Defendant's purported reason for terminating Plaintiff's residency.

Accordingly, the discovery to which Defendant alludes is no substitute for the documents sought

by Plaintiff.

Second, "[u]nder HIPAA, . . . medical providers are permitted to disclose patients' medical records so long as they redact individually identifiable information."  See Davis v. Elwyn, Inc., No. 2:20-cv-05798, 2021 WL 4902333, at *7 n.6 (E.D. Pa. Oct. 20, 2021).  Here, consistent with the Confidentiality Agreement into which the parties entered at the outset of this litigation,[4] Defendant may produce the patients' medical notes in a redacted format to protect their individually identifiable information.[5]  (Doc. No. 14.)  For these reasons, the Court will direct Defendant to produce RFD #48.

### 2. RFD #61 and #62

RFD #61 and #62 request Defendant's 2017 and 2018 "Milestone Review" evaluations prepared by the Clinical Competency Committee ("CCC") for Plaintiff's peer interns, including electronic summaries known as "spider graphs."  (Doc. Nos. 48 at 27, 30, 51 at 17.)  "Subject to and without waiving" its objections to Plaintiff's request, Defendant produced evaluations for the other interns from 2017 and 2018.  (Doc. No. 48 at 27, 30-31.)  Defendant did not, however, produce their spider graphs.

At the outset, the Court concludes that RFD #61 and #62 request relevant discovery to the extent they seek information relating to the issue of whether Plaintiff was treated differently than similarly situated interns.[6]  Having determined that Plaintiff's requests are relevant, the Court

---

[4]  This Court approved the parties' Confidentiality Agreement upon finding good cause under Pansy v. Borough of Stroudsburg, 23 F.3d 772 (3d Cir. 1994).  (Doc. No. 15.)

[5]  While Defendant raises a claim about "proportionality," that claim is based on the assumption that Defendant is "require[d] to keep its information private" under HIPAA.  (Doc. No. 51 at 22.)

[6]  Defendant argues that Plaintiff's request should be denied because "Plaintiff and other PGY-1 Preliminary Interns are not valid comparators."  (Doc. No. 51 at 17.)  In support of this argument, Defendant cites its discussion regarding RFD #74, where this argument is fully

turns to whether Defendant has met its burden of demonstrating that Plaintiff's requests are nevertheless improper.  Defendant argues that Plaintiff's requests are improper because spider graphs do not exist for the other interns and responsive documents have already been produced. (Doc. No. 51 at 17.)  As to RFD #62, Defendant further contends that, even if the spider graphs requested by RFD #62 exist, an "'apples to apples' comparison is [still] not possible because Plaintiff's evaluations would span from January 2018 to February 2018[,] while other PGY-1 Preliminary Interns' evaluations would run from January 2018 to June 2018, the academic year." (Doc. No. 51 at 18.)

Regarding Defendant's contention that responsive documents were already produced, the Court observes that Defendant has not produced spider graphs.  Accordingly, although Defendant has produced relevant documents in response to Plaintiff's requests, it has not produced responsive ones.  See Fed. R. Civ. P. 34(b)(1)(C) (explaining that "a party may specify the form or forms in which electronically stored information is to be produced").  Given the liberal treatment accorded to discovery rules, and Plaintiff's reasonable requests for spider graphs, which would yield evaluations for the other interns in the same format as the evaluations produced for Plaintiff, Defendant's argument is unavailing.  See also 7 James Wm. Moore et al., Moore's Federal Practice § 34.12[3]-[4][b] (3rd ed. 2013) (explaining that "a party may be ordered to produce information in an electronic format" even if "the electronic information does not exist in the requested format" and the information has already been produced in another form).

Turning to Defendant's contention that spider graphs do not exist, the Court recognizes

_____

briefed.  (Id.)  The Court therefore considers this argument in its analysis for RFD #74, and for the reasons stated, infra, rejects it.

that "[a] party cannot be compelled to create, or cause to be prepared, new documents solely for

their production," and that "Rule 34 only requires a party to produce documents that are already

in existence."  See id. § 34.12[2].  However, querying an existing electronic database to export

relevant information does not require the creation of a new document.  See, e.g., N. Shore-Long

Island Jewish Health Sys., Inc. v. MultiPlan, Inc., 325 F.R.D. 36, 51 (E.D.N.Y. 2018)

(explaining that, while "a party should not be required to create completely new documents, that

is not the same as requiring a party to query an existing dynamic database for relevant

information.  Courts regularly require parties to produce reports from dynamic databases,

holding that the technical burden . . . of creating a new dataset for [] litigation does not excuse

production") (alteration in the original) (quoting Apple Inc. v. Samsung Elecs. Co., No. 12-cv-

00630, 2013 WL 4426512, at *3 (N.D. Cal. Aug. 14, 2013)).  Moreover, Federal Rule of Civil

Procedure 34(a)(1)(A) requires parties to "translate" electronic information into a reasonably

usable form, and the advisory committee's notes make clear that Rule 34(b) "permits the

requesting party to designate the form or forms in which it wants electronically stored

information produced," see Fed. R. Civ. P. 34(b) (advisory committee's notes to 2006

amendment).

Here, Plaintiff's discovery requests seek physical documents as well as any electronically

stored data (Doc. No. 49-11 at 3-4), and the parties agree that Plaintiff requested spider graphs,

which Defendant has not produced.  Additionally, Defendant does not claim that it lacks the

underlying electronic information or technology needed to produce spider graphs, or that

producing spider graphs would be disproportionate or burdensome given the needs of this case.

Accordingly, to the extent Defendant still possesses the necessary information to produce spider

graphs, Defendant will be directed to comply with RFD #61 and #62.[7]  See, e.g., IQVIA, Inc. v. Veeva Sys., Inc., No. 2:17-cv-00177, 2019 WL 6044938, at *7 (D.N.J. Nov. 14, 2019) (holding that "to the extent th[e requested] information is maintained by" the responding party, it "shall produce win/loss data detailing relevant sales opportunities"); see also MultiPlan, Inc., 325 F.R.D. at 51 (explaining that to the extent the responding party "can input search parameters and produce varying configurations of [its existing] raw data, and to the extent the data is otherwise discoverable, [the responding party] cannot avoid production without a more thorough showing that production would be unduly burdensome or costly"); Gonzales v. Google, Inc., 234 F.R.D. 674, 683 (N.D. Cal. 2006) (requiring the defendant to "create new code to format and extract [the requested] query and URL data from many computer banks, in total requiring up to eight full time days of engineering time," even though the defendant argued that "it faces an undue burden because it does not maintain search query or URL information in the ordinary course of business in the format requested," upon finding that: the underlying data existed; the defendant did "not represent that it is unable to extract the information requested from its existing systems"; and because the party seeking discovery agreed to pay for producing the discovery).

---

[7]  In reaching this conclusion, the Court rejects Defendant's specific argument regarding RFD #62.  As previously noted, Defendant contends that even assuming the spider graphs requested by RFD #62 exist, Plaintiff's motion should be denied because an "'apples to apples' comparison is not possible," given that "Plaintiff's evaluations would span from January 2018 to February 2018[,] while other PGY-1 Preliminary Interns' evaluations would run from January 2018 to June 2018, the academic year."  (Doc. No. 51 at 18.)  This argument does not suggest that Plaintiff's request is disproportionate or burdensome given the needs of this case.  Instead, it functionally challenges the relevance of Plaintiff's request.  Defendant's argument is unavailing because it does not establish that Plaintiff's request is "of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure[.]"  See Burke, 115 F.R.D. at 224.  Indeed, the Court has already concluded that Plaintiff's request is relevant, and even if Plaintiff would not be able to make a perfect "apples to apples" comparison, he would still be able to make a meaningful one by receiving evaluations for the other interns in the same format as the evaluations produced for him.

3.      **RFD #69 and #70**

RFD #69 seeks the December 2017 CCC Milestone Review of Plaintiff "in the same format as provided for the other PGY-1 Preliminary Interns," and RFD #70 seeks the "June 2018 C[CC] Milestone Review of Plaintiff in the same format as provided for the other P[G]Y-1 . . . Preliminary Interns." (Doc. No. 48 at 32-34.) As an initial matter, the Court concludes that these requests are relevant insofar as they are reasonably calculated to lead to the discovery of admissible evidence regarding whether Defendant treated Plaintiff differently than the other PGY-1 interns. Having made this determination, the Court turns to whether Defendant has met its burden of showing why the discovery requested is improper.

Defendant asserts that the Court should deny Plaintiff's request for an order compelling responses to RFD #69 and #70 for two reasons: the discovery these requests seek does not exist, and responsive documents have already been produced. (Doc. No. 51 at 20.) Regarding RFD #70, Defendant additionally asserts that it did not produce the June 2018 CCC Milestone Review because Plaintiff's PGY-1 internship was terminated in March of that year.

As to RFD #69, Defendant falls short of establishing its burden of showing why Plaintiff's relevant request is improper. In particular, Defendant's contention that the discovery requested does not exist is rejected because, as discussed, supra, nothing in the record or Defendant's briefing indicates that it lacks the ability to query its existing datasets to comply with Plaintiff's request. Defendant's argument that RFD #69 should be denied because responsive documents have been produced is also rejected for the reasons explained, supra: namely, they do not comply with the format specified in Plaintiff's request. Defendant provided Plaintiff's personal evaluations in a "full academic year format," which does not allow him to compare himself "with the other interns at the point in time of the mid-year review," when initial

steps were purportedly taken in the lead up to his termination (Doc. No. 48 at 32-33), or with his

peers for the "period following the mid-year review" (id. at 34-35).  Accordingly, based on the

liberal treatment accorded to discovery rules, the Court will direct Defendant to comply with

RFD #69 to the extent it still maintains the necessary information to do so.

By contrast, the Court will deny Plaintiff's motion as to RFD #70.  The Court finds

persuasive Defendant's argument that, because Plaintiff's internship was terminated in March

2018, "June 2018 reviews were not generated" and therefore do not exist.  (Doc. No. 51 at 20.)

See Amfosakyi v. Frito Lay, No. 1:11-cv-00651, 2011 WL 5593133, at *3 (M.D. Pa. Nov. 17,

2011) (stating that the court can compel neither "the production of things that do not exist" nor

"the creation of evidence by the parties who attest that they do not possess the material sought by

an adversary in litigation").[8]  Plaintiff's argument to the contrary—that Defendant's argument

"does not make sense because [it] has already generated reports on [Plaintiff] through June 2018

with print dates during this litigation" (Doc. No. 55 at 12)—fails because those print dates do not

establish that Defendant evaluated Plaintiff after terminating his residency in March 2018.  The

Court will therefore deny Plaintiff's motion to compel a response to RFD #70.

### 4.      RFD #71, #72, and #73

RFD #71, #72, and #73 seek notes and minutes from CCC meetings held on December

12, 2017 and March 6, 2018.  (Doc. No. 48 at 13, 23, 26.)  Even assuming these requests are

relevant, the Court can dispense with them based on Defendant's assertion that it has already

---

[8]  In contrast with RFD #62—which requests Plaintiff's peers' spider graphs, the underlying data
of which Defendant possesses, for periods during which the peers were enrolled in the residency
program—RFD #70 requests a nonexistent evaluation pertaining, in large part, to a period of
time following Plaintiff's termination, when he was not enrolled.  In this way, RFD #62 asks
Defendant to use existing data to generate spider graphs, as it did in the case of Plaintiff, while
RFD #70 asks Defendant to create an evaluation based on incomplete information pertaining to
Plaintiff's performance for the Spring 2018 semester following his termination.

provided all responsive documents from those meetings, and representation that Plaintiff's motions seek handwritten notes from those meetings, which do not exist.  (Doc. No. 51 at 13, 15.)  Because the Court cannot compel Defendant to produce physical documents that it does not possess, RFD #71, #72, and #73 must be denied.  See Amfosakyi, 2011 WL 5593133, at *3.

Plaintiff's counterarguments are unavailing.  Specifically, he insists that handwritten notes must exist, and argues that Defendant's representations to the contrary are unsupported by the record and rely on inadmissible opinions from "counsel's . . . brief," which are "inadequate to establish such a finding" pursuant to Federal Rule of Evidence 602.[9]  (Doc. No. 55 at 14, 20.) The Court rejects these arguments in light of Federal Rule of Civil Procedure 11(b).  Under Rule 11(b), an attorney who presents "a pleading, written motion, or other paper . . . certifies" to "the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that "factual contentions have evidentiary support" and that "the denials of factual contentions are warranted on the evidence[.]"  See Fed. R. Civ. P. 11(b)(3)-(4) (emphasis added).  Moreover, as officers of the Court, attorneys are obligated to engage in discovery truthfully.  See, e.g., Broderick v. Dellasandro, 859 F. Supp. 176, 179 (E.D. Pa. 1994) (explaining that "attorneys are officers of the court and have an ethical obligation to be honest with their adversaries' inquiries about the facts of the case").  The Court accordingly accepts Defendant's representations that all responsive documents from the meetings have been produced and that the handwritten notes requested do not exist.  Plaintiff's motion as to RFD

---

[9]  Plaintiff also suggests that there are reasons to doubt Defendant's representation that it produced the "CCC Minutes" from the December 12, 2017 meeting.  (Doc. Nos. 48 at 25-26, 51 at 15-16.)  For the reasons discussed below, the Court accepts Defendant's representation.

#71, #72, and #73 will therefore be denied.[10]

**5.      RFD #74**

RFD #74 requests "All Program Administration Meeting Notes and/or minutes regarding Plaintiff as referred to by" one of the deponents and pertains to discussions at those meetings about Plaintiff and his PGY-1 peers.  (Doc. No. 48 at 16, 18.)  Defendant objected to the request insofar as it sought information about non-parties to the case, but provided redacted documents.  (Id. at 16, 17; Doc. No. 51 at 13.)  Plaintiff argues that Defendant should be required to unredact its responses to RFD #74 and contends that Defendant's response is incomplete because it does not include the handwritten notes of doctors who participated in those meetings.  (Doc. No. 48 at 17.)  As an initial matter, the Court concludes that RFD #74 seeks relevant information in the form of documents that may reflect how Plaintiff's "progress was discussed in comparison to his peer interns" and, as such, indicate whether he was similarly situated to his peers and the extent to which Defendant treated them differently.  (Id. at 18; Doc. No. 55 at 17.)

Having determined that Plaintiff's request is relevant, the Court turns to whether Defendant has met its burden of showing that Plaintiff's request should nevertheless be denied. To this end, Defendant argues that Plaintiff's request is improper because he is not a valid comparator to the other PGY-1 interns and contends that it properly redacted information from the documents it produced because they pertain to non-party interns.  (Doc. No. 51 at 10-14.) Defendant also contends that all meeting notes have been produced and that no handwritten notes exist.  (Id.)

First, the Court rejects Defendant's argument that RFD #74 should be denied because

_____

[10]  Plaintiff's reliance on Federal Rule of Evidence 602 is also rejected because Rule 602 governs when a "witness may testify to a matter."  Attorneys are not witnesses—nor are their representations mere opinions, for the reasons discussed above.

Plaintiff is not a valid comparator to the other interns.  (Id. at 13-14.)  Indeed, Defendant's argument presupposes the answer to whether Plaintiff was similarly situated to his peers—a factual issue that has not yet been established.  See, e.g., Khazarian v. Gerald Metals, LLC, No. 3:16-cv-01762, 2017 WL 11017757, at *1 (D. Conn. Nov. 9, 2017) (explaining that the court "will not address" the question of whether an individual is "an appropriate comparator . . . now, in the context of a discovery dispute," and concluding that the information sought was "discoverable" because it was relevant to the plaintiff's "employment discrimination claims"); Provine v. Ambulatory Health Servs., Inc., No. 4:13-cv-00334, 2014 WL 47771, at *4 (M.D. Pa. Jan. 6, 2014) (collecting cases that explain why a court cannot make a determination about whether a plaintiff is a valid comparator during a discovery dispute).

Second, the Court concludes that Defendant has failed to show that Plaintiff's request for an order directing it to produce unredacted responses to RFD #74 is improper.  To the extent Defendant is concerned about providing non-party information, the Court observes that the non-parties in question are other interns.  Defendant has already produced detailed evaluations about the other interns, and if there are unique privacy concerns underlying RFD #74, Defendant neither identifies them nor indicates why they are not mitigated by the parties' Confidentiality Agreement.  Accordingly, Defendant will be directed to produce unredacted copies of the documents it previously produced in response to RFD #74.  See, e.g., Rotex Glob., LLC v. Gerard Daniel Worldwide, Inc., No. 1:17-cv-2118, 2019 WL 5102165, at *3 (M.D. Pa. Oct. 11, 2019) (granting a motion for the release of non-party information without redactions because the information was deemed relevant and the non-parties' interests were deemed adequately protected by the parties' confidentiality agreement); see also Coventry Cap. US LLC v. EEA Life Settlements Inc., No. 17-cv-07417, 2020 WL 7383940, at *9 (S.D.N.Y. Dec. 16, 2020)

(explaining that to the extent the responding party "is concerned about the production of confidential or highly sensitive documents, they may be designated as confidential").

By contrast, Plaintiff's request for handwritten notes pursuant to RFD #74 will be denied. Again, Defendant represents that these notes do not exist, and as explained, supra, Defendant cannot be compelled to provide discovery it does not possess. For these reasons, the Court will grant in part and deny in part Plaintiff's motion as to RFD #74. Having addressed Plaintiff's motion to compel discovery, the Court turns to Plaintiff's motion challenging the sufficiency of Defendant's responses to his requests for admissions.

**B.      Plaintiff's Motion Challenging the Sufficiency of Defendant's Responses to Admissions**

Plaintiff's motion to determine the sufficiency of Defendant's responses pertain to Requests for Admissions ("RFA") #1, #3, #6, #8, #11, and #12 (Doc. No. 47). The Court addresses each RFA below.

**1.      RFA #1**

RFA #1 requests Defendant to admit that it "does not have any written document that provides the date and time when Defendant contends Plaintiff could not be located to provide patient care while on an assigned Lebanon VA Rotation." (Doc. No. 50 at 18.) In response, Defendant stated it "cannot admit or deny this request and it is therefore denied. After reasonable inquiry and based on the information known or readily available, Defendant is not able to locate a written document regarding the date and time Plaintiff could not be located to provide patient care while on an assigned Lebanon VA rotation." (Id.) Defendant reiterates these points in its brief in opposition and asks the Court to conclude that it has sufficiently responded to RFA #1. (Doc. No. 52 at 10.)

The Court is not persuaded by Defendant's contention. By responding to Plaintiff's

request to admit that it lacks certain documents, with an explanation that it has no way of answering this request because it cannot find those documents, Defendant is splitting hairs. Indeed, Defendant's argument functionally acknowledges that it does not have the information requested by Plaintiff.  Accordingly, the Court will deem RFD #1 admitted.  See, e.g., Pugh v. Cmty. Health Sys., Inc., No. 5:20-cv-00630, 2021 WL 2853268, at *4 (E.D. Pa. July 7, 2021) (deeming a defendant's denial of a plaintiff's request to "admit or deny they cannot identify who, if anyone, supervised the 3:00-11:00 p.m. shift at the hospital on January 23, 2014," where the defendant explained "at present, counsel, through former hospital employees cannot identify the name of the nightshift supervisors from 3-11 back in the January 2014 time frame," as an admission that they could not identify any supervisors).

### 2.    RFA #3 and #6

RFA #3 requests Defendant to admit that "New Innovations," a software used for intern performance evaluations "during the period July 1, 2017 through December 31, 2018," "automatically enters a date and time stamp when the evaluation is submitted by the evaluator." (Doc. No. 50 at 19.)  RFA #6 requests Defendant to admit that a doctor "submitted an evaluation in New Innovations of [Plaintiff] on August 9, 2018."  (Doc. No. 50 at 21.)  Defendant denied each request, explaining the software used for dating evaluations affixes time stamps when the evaluations are finalized or completed—not when they are submitted.  (Id. at 19-21; Doc. No. 52 at 10-11.)  Plaintiff suggests that Defendant's responses amount to hair-splitting because deposition testimony indicates that the difference between when something is finalized and when it is submitted is semantic, and argues that "[i]f the Court observes there is no meaningful distinction between the words submitted, completed, or finalized," it should require Defendant to "amend its response" to RFA #3 and #6 or deem them admitted.  (Doc. Nos. 50 at 19-21, 54 at

13-15.)

The deponent referred to by Plaintiff testified: evaluations "are timestamped . . . whenever the [evaluator] place[s] the evaluation – I'm sorry, complete[s] the evaluation, that is the timestamp of that individual's completing it." (Doc. Nos. 50 at 20, 52 at 11.)  This testimony, if anything, supports Defendant's contention that timestamps are affixed when evaluations are finalized or completed—not when they are submitted.  Accordingly, the Court concludes that Defendant's responses denying RFA #3 and #6 are sufficient.[11]

**3.     RFA #8**

RFA #8 requests Defendant to admit it has "not disclosed to Plaintiff any history and physical notes, transfer of care note, progress notes, or medical record of any kind relating to the patients Dr. [Snyder] refers to in her February 23, 2018 email." (Doc. No. 50 at 21.)  Defendant initially objected to this request on multiple grounds, including "on the basis that the document requests were not relevant or proportional to the needs of the case because the scope of information sought was not likely to assist in resolving the question of liability in this case" and "because the Request was overbroad and unduly burdensome.  Defendant further argued that the information sought is HIPAA protected patient information." (Id. at 21.)  "Without waiver of these objections," Defendant answered that "the Request for admission is denied.  Information, including patient history, physical notes, transfer of care notes, progress notes and medical records related to the patients Dr. Snyder refers to in her February 23, 2018 email was available to Plaintiff at the time of the incidents." (Id.)  Defendant reiterates these arguments in its brief in

---

[11]  The Court is not persuaded by the cases referred to in Plaintiff's briefs because they involved disputes predicated on semantic differences.  See, e.g., Loughery v. Mid-Century Ins. Co., No. 19-cv-00383, 2020 WL 6047565, at *2 (W.D. Pa. Oct. 13, 2020); Pugh, 2021 WL 2853268, at *4.  Here, however, the Court has no basis for concluding that Defendant's responses are predicated on meaningless differences in terminology.

opposition to Plaintiff's pending motion.  (Doc. No. 52 at 12.)

The Court is not persuaded by Defendant's arguments.  For instance, HIPAA protects the disclosure of protected health information.  <u>See</u> <u>generally</u> 45 C.F.R. § 164.512.  Plaintiff's request, however, does not ask Defendant to disclose health information—it asks Defendant whether particular discovery has been provided.  Similarly, the Court rejects Defendant's contention regarding the overbroad and burdensome nature of Plaintiff's request because RFA #8 does not ask Defendant to produce any documents.  Accordingly, Defendant's arguments are misplaced.

Turning to the sufficiency of Defendant's response, its explanation that "information, including patient history, physical notes, transfer of care notes, progress notes, and medical records relating to Dr. Snyder's February 23, 2018 email was available to Plaintiff <u>at the time</u> of the patient incidents," (Doc. No. 52 at 12) (emphasis added), does not address Plaintiff's question of whether such documents have <u>currently</u> been produced.  Because Defendant has failed to answer Plaintiff's request, the Court will direct Defendant to submit an amended answer.  <u>See</u> Fed. R. Civ. P. 36(a)(6).

### 4.    RFA #11

RFA #11 requests Defendant to admit that it "required PGY-1 residents in the internal medicine residency program from July 1, 2017 through June 30, 2018, to be able to work 80 hours per week."  (Doc. No. 50 at 13.)  Defendant objected to this request because "it is vague and misrepresents the nature of the program requirements" (<u>id.</u> at 13-14), which it claims requires that residents not work over eighty (80) hours per week when averaged over a four (4) week period" (Doc. No. 52 at 9).  Defendant's brief in opposition reiterates that the request cannot be answered because "Plaintiff's [r]equest mistakes the program requirements."  (<u>Id.</u> at 9-

10.)

Even assuming Plaintiff mistakes the program's requirements, Defendant neither explains why it cannot admit or deny Plaintiff's request based on its assessment of the program's true requirements nor asserts that it made a reasonable inquiry to determine whether it can respond to Plaintiff's request based on that assessment.  See Fed. R. Civ. P. 36(a)(4).  Because Defendant has not provided the Court with sufficient grounds to conclude that it cannot admit or deny Plaintiff's request, the Court finds insufficient Defendant's response to RFA #11.  Accordingly, the Court will direct Defendant to serve an amended answer to RFA #11.  See Fed. R. Civ. P. 36(a)(6).

### 5.    RFA #12

RFA #12 requests Defendant to admit that it "did not require Resident A, who received a warning letter in December 2017, to have a documented emergency plan to share with program administration for acute mental health issues that may arise."  (Doc. No. 50 at 12.)  Defendant initially objected to this request because "it is vague and refers to an individual that is not a valid comparator," and answered, "[without] waiver of this objection," that it "cannot admit or deny this request and it is therefore denied."  (Id.)

Defendant's brief in opposition to Plaintiff's motion states that it subsequently provided the following qualification to Plaintiff's request in its letter to the Court on October 11, 2022: "documented emergency plans are requested for reasons related to specific circumstances and not required for all residents in receipt of a warning letter.  While Resident A did receive a warning letter, they did not need a documented emergency plan."  (Doc. No. 52 at 8.)  Based on this qualification, Defendant claims that it has "sufficiently responded to this [r]equest."  (Id. at 9.)

22

The Court is not persuaded by Defendant's arguments.  Again, Defendant has failed to provide a sufficiently detailed explanation for why it cannot admit or deny Plaintiff's request. See Fed. R. Civ. P. 36(a)(4).  If anything, Defendant seems to admit that it did not provide Resident A with a documented emergency plan.  Accordingly, the Court will deem Defendant's response to RFA #12 insufficient and will direct Defendant to serve an amended answer to it. See Fed. R. Civ. P. 36(a)(6).

### C.     Reasonable Expenses

Plaintiff's requests for reasonable expenses rely on Federal Rule of Civil Procedure 37(a)(5)(A), and Defendant's requests rely on Federal Rule of Civil Procedure 37(a)(5)(B).  As discussed, supra, Rule 37(a)(5)(A) applies when a discovery motion is granted, and Rule 37(a)(5)(B) applies when a motion is denied.  Neither rule is applicable where, as here, a court grants in part and denies in part discovery motions.  Instead, Rule 37(a)(5)(C) applies, under which a court has the discretion to award reasonable expenses.  See, e.g., Cope v. Brosius, No. 4:12-cv-02382, 2016 WL 539142, at *3 (M.D. Pa. Feb. 11, 2016) (explaining that because the discovery motion was granted in part and denied in part, the court will exercise its discretion to direct "that each party bear its own costs associated with this discovery litigation").

Here, neither party seeks expenses under Rule 37(a)(5)(C).  Moreover, upon review of the record as whole, including the arguments raised by the parties regarding Plaintiff's motion to compel discovery and motion challenging the sufficiency of Defendant's responses to his requests for admissions, the Court concludes that the parties had a genuine dispute regarding the scope of discovery in this case.  For these reasons, the Court will exercise its discretion to deny the parties' respective requests for expenses.  See Hadley v. Pfizer Inc., No. 08-cv-01440, 2009 WL 1597952, at *4 (E.D. Pa. June 5, 2009) (concluding that an award of expenses was

inappropriate because the defendant "did not succeed on each of its discovery claims" and because "several of [the] [p]laintiff's defenses were meritorious") (citing Fed. R. Civ. P. 37(a)(5)(C)), see also Lafate v. Vanguard Grp., Inc., No. 13-cv-05555, 2014 WL 4384510, at *10 (E.D. Pa. Sept. 5, 2014) (concluding that an award of expenses was inappropriate because "the parties had a genuine dispute as to the scope of discovery in th[e] case").

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Plaintiff's discovery motions.  (Doc. Nos. 46-47.)  An appropriate Order follows.