**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PABLO A. SALCEDO,** | : | |
| **Plaintiff** | : | **No. 1:19-cv-02201** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **MILTON S. HERSHEY MEDICAL** | : | |
| **CENTER,** | : | |
| **Defendant** | : | |

## MEMORANDUM

Before the Court is Defendant Milton S. Hershey Medical Center ("Defendant")'s Motion

for Leave to file Under Seal its Motion for Summary Judgment (Doc. No. 72), Defendant's

response (Doc. No. 83) to the Court's July 20, 2023 Order (Doc. No. 74) directing Defendant to

show cause why the documents filed provisionally under seal in connection with its summary

judgment motion should remain sealed pursuant to the requirements of In re Avandia Marketing

Sales Practices and Products Liability Litigation, 924 F.3d 662 (3d Cir. 2019) ("Avandia")

governing the sealing of materials filed in connection with a summary judgment motion, as well

as Defendant's Motion to Seal its Reply in Further Support of its Motion for Summary Judgment

(Doc. No. 88).  Also before the Court is Plaintiff Pablo A. Salcedo ("Plaintiff")'s Motion for

Leave to File Documents Under Seal (Doc. No. 79), which was clarified by his response (Doc.

No. 90) to the Court's August 14, 2023 Order to Show Cause (Doc. No. 81) directing Plaintiff to

show cause why the documents filed provisionally under seal in connection with his opposition

to Defendant's summary judgment motion should remain sealed pursuant to Avandia.

For the reasons that follow, the Court will largely deny Defendant's motions but will

grant Defendant's motion for leave to file under seal its motion for summary judgment insofar as

it will retain several documents under seal and permit Defendant to file redacted versions of a

number of exhibits containing confidential non-party medical information.  The Court will deny

Defendant's motion to seal its Reply Brief in support of summary judgment and will direct the

Clerk of Court to unseal the brief.  The Court will also largely deny Plaintiff's motion, but will

grant the motion insofar as the Court will permit Plaintiff to file appropriately redacted versions

of three exhibits on the docket of this matter.  Finally, the Court will instruct the Clerk of Court

to unseal numerous documents provisionally filed under seal by both parties.

## I.    BACKGROUND

### A.    Factual Background[1]

While this case has an extensive factual background, the Court recites only the

background necessary to the resolution of the pending motion.  Plaintiff was a first-year medical

resident employed by Defendant at the time of his suspension and termination.  (Doc. No. 1 at 1.)

Plaintiff alleges that Defendant placed him on leave and fired him once he began to exercise his

right to "secure help for his disability."  (Id. at 2.)  In his initial complaint, Plaintiff maintains

that he has anxiety and depressive disorder.   (Id. ¶ 37.)  Plaintiff observes that he has "had this

disability his whole life" and "[d]espite having this chronic condition, [he] has been successful in

his academic and social life because he learned to manage it."  (Id. ¶¶ 40–41.)  Plaintiff alleges

that he requested "reasonable accommodations" from the Chief Residents of Defendant's

Residency Program.  (Id. ¶ 47.)  Plaintiff claims that these requests, purportedly made in late

August of 2017, included a recommendation that he receive a quiet space for notetaking, the

ability to meet with colleagues in advance of shifts, sitting during work rounds, and the chance to

meet monthly with his own healthcare provider.  (Id. ¶ 48.)  Plaintiff maintains that the Chief

---

[1]  The facts provided herein are drawn from Plaintiff's complaint and Defendant's Statement of Uncontested Material Facts in Support of its Motion for Summary Judgment.  (Doc. Nos. 1; 73-95.)  This section is meant to provide context for the pending motions.

Residents found these requests to be reasonable.  (Id. ¶ 49.)

On August 28, 2017, Plaintiff claims that he went to his own physician and secured a written letter requesting two specific accommodations: "[a]ssignment to less stressful rotations when possible" and "[a]ssignment to rotations which would allow for adequate sleep and time off on the weekend when possible."  (Id. ¶ 54.)  In October of 2017, Plaintiff maintains that he attempted to contact Dr. Swallow, Program Director of the Residency Program, to request a meeting that would address his accommodations.  (Id. ¶ 59.)  Plaintiff alleges that: (1) his proposed accommodations were never implemented; (2) he was forced to continue working 78–80 hours each week; and (3) his schedule forced him to use sleep aids.  (Id. ¶¶ 60–62.)  Plaintiff alleges that the sleep aids caused his temporary impairment.  (Id. ¶ 63.)  Plaintiff claims to have reported this impairment to Dr. Swallow in December of 2017.  (Id.)  Plaintiff notes that a conversation between Dr. Swallow and Plaintiff on December 7, 2017, "did not discuss [Plaintiff]'s request for accommodation."  (Id. ¶ 64.)  Instead, after having been temporarily removed from active service, Plaintiff maintains that Dr. Swallow directed him to secure a fitness for duty assessment before he could return to his job as a medical resident.  (Id. ¶ 65.)  Plaintiff notes that he was cleared to return to full duty on December 11, 2017.  (Id. ¶ 67.)  Plaintiff claims that, upon returning to full duty, he was still scheduled for eighty (80) hours of work per week.  (Id. ¶ 72.)

On February 23, 2018, Dr. Snyder, one of Defendant's employees, wrote to the Chief Residents about an incident where Plaintiff allegedly had to leave his hospital shift early because of his anxiety and depression.  (Id. ¶ 84.)   Following this incident, Plaintiff claims that Defendant's staff held a series of meetings to discuss his status in the Residency Program and his need for accommodations.  (Id. ¶¶ 85, 89, 90, 92–94.)  Plaintiff maintains that the

accommodations were never implemented.  (Id.)

On February 28, 2018, Plaintiff received a communication from Dr. Munyon on behalf of the Core Competency Committee ("CCC").  (Id. ¶ 95.)  This communication informed Plaintiff that the CCC had received a letter from Plaintiff's psychiatrist and would discuss the contents of the letter at some point during the following week.  (Id. ¶ 95.)  On March 6, 2018, Plaintiff was notified that the CCC recommended his removal from clinical service.  (Doc. No. 73-95 ¶ 139.) Plaintiff's leave of absence from the Residency Program was extended to March 26, 2018.  (Id. ¶ 140.)  Plaintiff was paid, with benefits, until June 30, 2018, at which time his employment was terminated by Defendant.  (Id. ¶ 141.)  On September 5, 2018, Plaintiff filed a Charge of Discrimination with the Equal Opportunity Employment Commission.  (Id. ¶ 144.)

**B.   Procedural Background**

On December 23, 2019, Plaintiff filed the above-captioned action (id. ¶ 145), claiming that Defendant discriminated against him in violation of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1973 ("RA") (Doc. No. 1 at 2).  Plaintiff also asserts pendant state claims pursuant to the Pennsylvania Human Relations Act ("PHRA"). (Id.)  On February 24, 2020, Defendant filed an answer (Doc. No. 7) and the parties engaged in a period of discovery.  After discovery closed, the Court set a deadline of July 17, 2023 for the filing of any dispositive motions.  (Doc. No. 67.)  On that date, Defendant filed a Motion for Leave to File Under Seal its Motion for Summary Judgment.  (Doc. No. 72.)  In its accompanying brief, Defendant argued that its Motion for Summary Judgment would include "non-party patient records, personnel-related records referencing physician peer-reviewed evaluations and notes of Plaintiff's competencies, and proprietary and business information relating to a healthcare facility."  (Doc. No. 72-1 at 2.)  Also on that date, Defendant filed its

4

Motion for Summary Judgment (Doc. No. 73), a brief in support of that motion (Doc. No. 73-1), relevant exhibits (Doc. No. 73-5 through 73-93), and a Statement of Material Facts (Doc. No. 73-95), all of which were filed provisionally under seal in light of Defendant's pending motion for leave to file under seal its motion for summary judgment.  Thereafter, on July 20, 2023, the Court issued an Order directing Defendant to show cause as to why "Defendant's motion for summary judgment (Doc. No. 73) and its related filings (Doc. Nos. 73-1 through 73-95) should not be made a part of the publicly available docket" under Avandia.  (Doc. No. 74 at 3.)  The Court set a July 31, 2023, deadline to comply.  (Id.)  On July 31, 2023, the Court granted Defendant an unopposed motion for an extension of time to comply with the show cause Order, giving Defendant until August 14, 2023, to respond.  (Doc. No. 76.)

On August 8, 2023, Plaintiff filed a Motion for Leave to File Documents Under Seal. (Doc. No. 79.)  That same day, Plaintiff filed a Memorandum in Support of Plaintiff's Motion to Seal Documents (Doc. No. 79-1), as well as his response to Defendant's Statement of Undisputed Facts (Doc. No. 80-6), one hundred and fifty-four (154) related exhibits (Doc. No. 80-1 through 80-5, 80-7), and his Brief in Opposition to Defendant's Motion for Summary Judgment (Doc. No. 80), all of which were filed provisionally under seal in light of Plaintiff's pending motion for leave to file documents under seal.  On August 14, 2023, the Court issued a show cause Order directing Plaintiff to show cause as to why Docket Numbers 80 through 80-7 "should not be made a part of the publicly available docket in this matter" under Avandia.  (Doc. No. 81 at 4.)

Also on August 14, 2023, Defendant filed a Memorandum of Law in Support of Defendant's Response to the Order to Show Cause.  (Doc. No. 83.)  On August 21, 2023, Defendant filed a Motion to Seal its Reply in Further Support of its Motion for Summary

Judgment.  (Doc. No. 88.)  That same day, Defendant filed a Memorandum of Law in Support of its Motion to Seal its Reply in Further Support of its Motion for Summary Judgment.  (Doc. No. 89.)

On August 24, 2023, Plaintiff filed a Memorandum of Law in Support of Plaintiff's Motion to Seal Via Redaction Certain Documents Filed in Response to Summary Judgment.  (Doc. No. 90.)  In this filing, Plaintiff greatly narrowed his sealing request.  (Id. at 1.)  Accordingly, the parties' motions to seal and responses to the Court's show cause Orders are ripe for resolution.

## II.    LEGAL STANDARD

The Third Circuit's opinion in Avandia confirmed its earlier holding that a common law right of access applies to judicial records, stating that there exists a "presumptive right of public access to pretrial motions of a nondiscovery nature, whether preliminary or dispositive, and the material filed in connection therewith."  See Avandia, 924 F.3d at 672 (citing In re Cendant Corp., 260 F.3d at 192).  The Third Circuit reiterated that "documents filed in connection with a motion for summary judgment are judicial records."  See id. (citing Republic of the Philippines v. Westinghouse Elec. Corp., 949 F.2d 653, 660–62 (3d Cir. 1991)).  However, Avandia recognized that "the common law right of access is 'not absolute'" and stated that "[t]he party seeking to overcome the presumption of access bears the burden of showing 'that the interest in secrecy outweighs the presumption.'"  See id. (quoting Bank of Am. Nat'l Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs., 800 F.2d 339, 344 (3d Cir. 1986)).  The Third Circuit held that "[t]he movant must show 'that the material is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure.'"  See id. (quoting Miller v. Ind. Hosp., 16 F.3d 549, 551 (3d Cir. 1994) (internal quotations omitted)).

The Third Circuit then detailed the nature of a district court's obligation in determining whether a litigant has met its burden to show that the presumptive right of access has been overcome, stating:

> [T]he District Court must articulate the compelling, countervailing interests to be protected, make specific findings on the record concerning the effects of disclosure, and provide[] an opportunity for interested third parties to be heard. In delineating the injury to be prevented, specificity is essential. Broad allegations of harm, bereft of specific examples or articulated reasoning, are insufficient. [C]areful factfinding and balancing of competing interests is required before the strong presumption of openness can be overcome by the secrecy interests of private litigants. To that end, the District Court must conduct[] a document-by-document review of the contents of the challenged documents.

See id. at 672–73 (cleaned up).

The Third Circuit in Avandia discussed not only the common law right of access to judicial records but also the First Amendment right of access to judicial proceedings, which "requires a much higher showing than the common law right [of] access before a judicial proceeding can be sealed." See Avandia, 924 F.3d at 673 (quoting In re Cendant Corp., 260 F.3d at 198 n.13). "It remains an open question in this Circuit whether the First Amendment right of access applies to records of summary judgment proceedings." Id. The majority in Avandia declined to address the applicability of the First Amendment right of access to summary judgment materials under the circumstances of that case, where the litigant had not met its burden to overcome the presumptive common law right of access to judicial records. See id. at 679–80. However, as to the First Amendment right of access, the court stated that "[w]e use a two-prong test to assess whether the right of access attaches: (1) the experience prong asks 'whether the place and process have historically been open to the press'; and (2) the logic prong evaluates 'whether public access plays a significant positive role in the functioning of the particular process in question.'" See id. at 673 (quoting N. Jersey Media Grp. Inc. v. United

States, 836 F.3d 421, 429 (3d Cir. 2016)).  If both prongs are met, the First Amendment right of

access presumptively applies, and this presumption can be rebutted "only if [the party seeking

closure is] able to demonstrate 'an overriding interest [in excluding the public] based on findings

that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'"

See id. (quoting Publicker Indus., Inc. v. Cohen, 733 F.2d 1059, 1073 (3d Cir. 1984)).  In

declining to consider the applicability of the First Amendment right of access under the

circumstances presented to it in Avandia,[2] the Court of Appeals directed that "[i]f on remand the

District Court concludes that any of the sealed documents merits continued confidentiality under

the common law right of access, then the Court should also consider the parties' arguments

regarding the First Amendment right of public access."  See Avandia, 924 F.3d at 680.

## III.   DISCUSSION

The Court first addresses Defendant's Motion for Leave to File Under Seal its Motion for

Summary Judgment and its response to the Court's July 20, 2023 Order—and whether Defendant

has met its burden to show that its interest in secrecy outweighs the common law presumption of

access to judicial records with respect to its brief in support of its motion for summary judgment

as well as dozens of exhibits filed alongside Defendant's brief—before addressing Defendant's

Motion to Seal its Reply in Further Support of its Motion for Summary Judgment.  Finally, the

Court will address Plaintiff's Motion for Leave to File Documents Under Seal, as well as his

response to the Court's August 14, 2023 Order.

---

[2]  Judge Restrepo, in an opinion concurring in part and dissenting in part, concluded that the First
Amendment right of public access extends to summary judgment materials.  See id. at 681–84.
The Second and Fourth Circuits have held that the First Amendment right of public access
extends to summary judgment materials.  See Lugosch v. Pyramid Co. of Onondaga, 435 F.3d
110, 124 (2d Cir. 2006); Rushford v. New Yorker Magazine, Inc., 846 F.2d 249, 253 (4th Cir.
1988).

**A.      Defendant's Motion for Leave to File Under Seal its Motion for Summary Judgment (Doc. No. 72)/Response to the Court's July 20, 2023 Order (Doc. No. 83)**

By way of its motion, Defendant seeks to maintain under seal its motion for summary judgment, brief in support of that motion, and all supplemental materials attached therein.  (Doc. No. 72.)  The Court first addresses Defendant's arguments pertaining to its brief in support of its motion for summary judgment, before turning to Defendant's arguments related to the continued sealing of filings submitted in support of its summary judgment motion.

**1.      Defendant's Brief in Support of its Motion for Summary Judgment**

Defendant's motion seeks to maintain under seal its brief in support of its motion for summary judgment, Docket Number 73-1.  Defendant's brief is fifty-eight (58) pages and comprehensively lays out Defendant's arguments in attempting to persuade the Court to grant its motion for summary judgment.  (Doc. No. 73-1.)

In Defendant's response to the Court's show cause Order, Defendant argues that the confidential exhibits discussed in its Brief in Support of its Motion for Summary Judgment "are inextricably intertwined with the reasons supporting the [Defendant's] reasons for dismissal" of Plaintiff.  (Doc. No. 83 at 10.)  Defendant claims that the filing of its brief "on the public docket would impair the Medical Center's duty to its patients and impact its obligations under state and federal law."  (Id.)  Defendant also maintains that, should its Brief in Support of its Motion for Summary Judgment be unsealed, it "would undermine the protections afforded by the Peer Review Protection Act ["PRPA"] privilege and defeat the legislature's intent for the statutory privilege."  (Id.)[3]

---

[3]  The relevant text of the PRPA reads:

As an initial matter, Defendant's statutory argument under the PRPA is insufficient to meet its Avandia burden.  The Court observes that "[f]ederal courts are to apply federal law of privilege to all elements of claims except those as to which State law supplies the rule of decision."  See Pearson v. Miller, 211 F.3d 57, 66 (3d Cir. 2000) (internal quotations omitted); see also Fed. R. Evid. 501.  Here, the ADA supplies the rule of decision.  Even though Plaintiff asserts both federal claims under the ADA and RA, as well as state law claims under the PHRA, courts in the Third Circuit have widely recognized that the PHRA is merely the state analog of the ADA.  See Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999) (stating that "we will only discuss Taylor's ADA claim because our analysis of an ADA claim applies equally to a PHRA claim").  Accordingly, federal privilege law applies in this case.  Since it is commonly recognized that "Congress has not statutorily enacted a medical peer review privilege . . . [n]or does such a privilege exist under federal common law," the Court finds that the PRPA does not prevent the Court from unsealing Defendant's Brief in Support of its Motion for Summary Judgment.  See Weiss ex rel. Est. of Weiss v. County of Chester, 231 F.R.D. 202, 205 (E.D. Pa. 2005) (denoting that "Congress has not statutorily enacted a medical peer review privilege").  Another court in this circuit, addressing this precise issue, wrote:

> [c]ritically, the Court also fails to see how Pennsylvania's privilege law is directly relevant under the Avandia standard—if anything, privilege may come into play in terms of courts evaluating and adopting protective orders, but the Third Circuit has made clear in Avandia that when it comes to analyzing the sealing of judicial records, the standard for protective orders is not the appropriate standard.

---

The proceedings and records of a review committee shall be held in confidence and shall not be subject to discovery or introduction into evidence in any civil action against a professional health care provider arising out of the matters which are the subject of evaluation and review by such committee . . . .

See 63 Pa. C.S. § 425.4.

See <u>United States ex rel. Doe v. Luketich</u>, No. 19-cv-00495, 2022 WL 672258, at *4 (W.D. Pa. Mar. 7, 2022).  Upon consideration of the foregoing, the Court finds that the PRPA does not, as a matter of privilege, require the Court to retain peer review proceedings under seal on the public docket in connection with summary judgment filings.

That said, the PRPA is relevant insofar as the Court evaluates whether Defendant can overcome the presumptive common law right of access to judicial records.  To reiterate, <u>Avandia</u> requires a party seeking to overcome the presumptive common law right of access to demonstrate both (1) "that the material is the kind of information that courts will protect" and (2) "that disclosure will work a clearly defined and serious injury to the party seeking closure."  <u>See</u> <u>Avandia</u>, 924 F.3d at 672 (cleaned up).

Here, Defendant's Brief in Support of its Motion for Summary Judgment contains several references to the CCC, discussing the CCC's concerns regarding Plaintiff's "Patient Care and Medical Knowledge" milestones.  (Doc. No. 73-1 at 19.)  The brief also contains language from a letter sent by the CCC to Plaintiff discussing his removal from the Residency Program.  (<u>Id.</u> at 20.)  Additionally, the brief includes references to Defendant's "legitimate non-discriminatory reasons for its actions concerning Plaintiff's employment."  (<u>Id.</u> at 33.)   However, the brief itself does not contain details of proceedings or deliberations of the CCC.  The Court recognizes that the brief discusses evaluative "records" utilized by the CCC to inform its decision making with regard to its evaluation of residents.  <u>See</u> (Doc. No. 73-1 at 26, 29, 56). These references are vague and unspecific.  In considering the foregoing, the Court is unpersuaded by Defendant's argument that the PRPA supports the premise that its brief in support of its motion for summary judgment contains "the kind of information that courts will protect."  <u>See</u> <u>Avandia</u>, F.3d at 924. The Court further finds that, even assuming Defendant made such a showing, Defendant has

simply failed to demonstrate that disclosure of the peer review information in its brief, namely the opaque references to CCC records, "will work a clearly defined and serious injury" to it.  See id.  Because Defendant offers nothing more than "[b]road allegations of harm, bereft of specific examples or articulated reasoning," see In re Cendant Corp., 260 F.3d at 194, the Court will deny in part Defendant's Motion to Seal its Motion for Summary Judgment as to its brief and will direct the Clerk of Court to unseal Defendant's brief in support of its motion for summary judgment.  See Pro., Inc. v. Progressive Cas. Ins. Co., No. 17-cv-00185, 2020 WL 502626, at *3 (W.D. Pa. Jan. 31, 2020) (holding that when a party provides only "conclusory assertions that the entire summary judgment record, include its brief, will contain confidential . . . information," this is insufficient to rebut the presumption of public access).

### 2.   Docket Numbers 73-73 and 73-75 through 73-78

The Court next examines Defendant's arguments pertaining to Docket Numbers 73-73, and 73-75 through 73-78, which are exhibits submitted in support of its motion for summary judgment.  Defendant refers to these documents as the "Patient Exhibits," because all five exhibits contain personal medical information relating to individuals who were treated by Defendant's employees and medical residents.  The Court reviews each exhibit in turn.

### a.   Docket Number 73-73

Docket Number 73-73 is an email synopsis containing the details of an incident during which Plaintiff is alleged to have forgotten to report the admission of a dangerously ill patient while working a hospital shift, resulting in the patient's eventual transfer to the Intensive Care Unit.  See (Doc. No. 73-73).  The email was circulated between several physicians who observed Plaintiff's actions that day, as well as other physicians who worked in Defendant's Residency Program.  See (id.).

Defendant argues that Docket Number 73-73 contains the confidential health information of a non-party.  (Doc. No. 89 at 5–6.)   Defendant posits that both the common law, as well as federal and state statutory authority, support its position that the presumption of public access can be rebutted.  (Id. at 5–7); see also Avandia, 924 F.3d at 672.

Upon review of the relevant briefing, cited authority, and Docket Number 73-73, the Court finds that Defendant has met its burden to demonstrate that its interest in secrecy outweighs the presumption of public access to judicial records as to Docket Number 73-73, as exposure of "patient treatment and diagnosis" information would inhibit Defendant's ability to protect patient privacy while continuing to serve the needs of patients.  (Doc. No. 89 at 5.) Defendant persuasively argues that no private individual would want documents that outline their medical conditions, diagnoses, and treatment plans to be available for public viewership, and further that medical providers also face particularized harms stemming from the potential public disclosure of patient treatment and diagnostic plans.  The knowledge that statements made during the course of treatment may eventually be available for public viewing could change how medical personnel go about their daily jobs and alter the types, frequency, or nature of the recommendations they offer to patients.  See Nat'l Inst. of Fam. & Life Advocs. v. Becerra, 138 S. Ct. 2361, 2374 (2018) (noting that "[d]octors help patients make deeply personal decisions, and their candor is crucial") (citation omitted).  Because of the non-party privacy concerns, as well as the potential chilling effect on medical professionals providing care, the Court finds that Defendant has demonstrated that the "interest in secrecy" here is great.  See Avandia, 924 F.3d at 672.

As discussed supra, Avandia requires a party seeking to overcome the presumptive common law right of access to demonstrate both (1) "that the material is the kind of information

that courts will protect" and (2) "that disclosure will work a clearly defined and serious injury to the party seeking closure."  See Avandia, 924 F.3d at 672 (cleaned up).  Defendant, by citing authority from the Third Circuit, HIPAA, and Pennsylvania law, has demonstrated that the non-party confidential medical information contained within Docket Number 73-73 is "the kind of information that courts will protect."  See id.; see also Davis v. Elwyn, Inc., No. 20-cv-05798 2021 WL 4902333, at *4 (E.D. Pa. Oct. 20, 2021) (stating that "[n]onparties' medical information is precisely the kind of information that courts will protect") (citation omitted); Wartluft v. Milton Hershey Sch. & Sch. Tr., No. 16-cv-02145, 2019 WL 5394575, at *7 (M.D. Pa. Oct. 22, 2019) (discussing how non-party privacy interests are implicated through the disclosure of medical records).  Further, Defendant has sufficiently demonstrated that disclosure of non-party confidential medical information "will work a clearly defined and significant injury" see id., to both Defendant and non-parties—namely, the involuntary disclosure of sensitive medical information that health care providers generally must keep confidential.  See Davis, 2021 WL 4902333, at *4 (discussing the inherent harm to non-party patients through the public disclosure of information "which those patients have an interest in keeping private"); see also United States v. Westinghouse Elec. Corp., 638 F.2d 570, 577 (3d Cir. 1980) (citation omitted) (stating that "information about one's body and state of health is [a] matter [in] which the individual is ordinarily entitled to retain within the private enclave where he may lead a private life").  Accordingly, the Court finds that Defendant has met its burden to demonstrate that its interest in secrecy outweighs the presumption of public access to summary judgment materials such that the Court will permit Defendant to file a redacted version of Docket Number 73-73 that removes all references to non-party confidential medical information.

The Court concludes that it is more appropriate to require Defendant to redact the non-

party confidential medical information from Docket Number 73-73 as opposed to retaining the entirety of Docket Number 73-73 under seal, as requested by Defendant.  See Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharms. Indus. Ltd., No. 20-cv-04660, 2023 WL 1100995, at *7 (E.D. Pa. Jan. 30, 2023) (finding that proposed redactions that are limited in scope are preferable to wholesale sealing); see also McCowan v. City of Philadelphia, No. 19-cv-03326, 2021 WL 3737204, at *4 (E.D. Pa. Aug. 24, 2021) (stating that "redaction only marginally affects the public's right to access materials filed in relation to judicial proceedings"). "Therefore, where possible, parties should propose redactions, rather than placing a whole document under seal." Del Nero v. NCO Fin. Sys., Inc., No. 21-cv-04823, 2021 WL 2375892, at *2 (E.D. Pa. June 10, 2021).  Accordingly, the Court will retain Docket Number 73-73 temporarily under seal on the docket of this matter while affording Plaintiff the opportunity to file on the Court's docket a version of this email synopsis redacted to remove non-party confidential medical information.[4]

---

[4] Avandia instructs that, if a district court finds that any documents merit continued sealing under the common law right of access, it "should also consider the parties' arguments regarding the First Amendment right of public access." See Avandia, 924 F.3d at 680.  Defendant did not address the First Amendment standard in its Memorandum of Law in Support of its Motion for Leave to File Under Seal (Doc. No. 72-1), its response to the Court's show cause Order (Doc. No. 83), or in its subsequent Memorandum of Law in Support of its Motion to Seal (Doc. No. 89).  Accordingly, in addressing Defendant's sealing requests, with regard to each of the exhibits ordered sealed by the Court upon its assessment of the common law right of access to judicial records, the Court will assume that the First Amendment right of public access attaches to those exhibits.  Considering this Court's narrowly tailored approach of favoring redaction over wholesale sealing, the Court finds that Defendant can meet its burden to satisfy the First Amendment's rigorous standard with regard to Docket Number 73-73.  The Court is guided by the historical recognition within this circuit that confidential medical information merits protection from public dissemination.  See Westinghouse Elec. Corp., 638 F.2d at 577 (describing the importance of protecting intimate personal health information); see also Davis, 2021 WL 4902333, at *6–7 (discussing the importance of keeping confidential medical information off the public docket); Wartluft, 2019 WL 5394575, at *6 (highlighting the appropriateness of redaction to prevent dissemination of non-party confidential medical information).

**b.**     **Docket Numbers 73-75 through 73-78**

Docket Numbers 73-75 through 73-78 are medical reports containing the physical examination results, medication recommendations, treatment plans, medical histories, and diagnostic information for certain of Defendant's non-party medical patients.  See (Doc. Nos. 73-75 through 73-78).  Patient names are already redacted from each of these exhibits.  See (id.).

Defendant argues that Docket Numbers 73-75 through 73-78 contain the confidential medical information of non-parties, thus allowing Defendant to overcome the presumptive right of public access to judicial records.  (Doc. No. 83 at 5–6.)  Defendant asserts that relevant authority supports its position that non-party confidential health information is the kind of information that courts generally keep sealed on the public docket.  (Id.); see also Avandia, 924 F.3d at 672.  Defendant argues that Docket Numbers 73-75 through 73-78 should be sealed because they contain "patients duration of admission, vitals, treating physicians, treatments, and diagnoses." (Doc. No. 83 at 5.)  Defendant cites its "duty" and in general terms its "legal obligation under state and federal law to keep [their] patients' confidential information private." (Id.)  Defendant cites several cases from this circuit that recognize the duty of doctors and healthcare providers to keep patient treatment plans and communications private, albeit not in the Avandia context.  (Id. at 6–7); see also Rodriguez-Ocasio v. L. Offs. of Joseph Molinaro, LLC., No. 17-cv-11926, 2018 WL 1773544, at *2 (D.N.J. Apr. 13, 2018) (stating that "physicians and hospitals are under a common law duty to maintain the confidentiality of patient records and information") (citation omitted); Vnuk v. Berwick Hosp. Co., No. 14-cv-01432, 2015 WL 4984974, at *7 (M.D. Pa. Aug. 19, 2015) (specifying that "[i]n the absence of a specific exception, [d]octors have an obligation to their patients to keep communications, diagnosis, and

16

treatment completely confidential") (citation omitted).  Defendant also argues that the patients

discussed in these exhibits "have not authorized the Medical Center to release their records."

(Doc. No. 83 at 6.)

Upon review of Docket Numbers 73-75 through 73-78, the Court finds that "patient

treatment and diagnoses" information is "the kind of information that courts will protect."  See

Avandia, 924 F.3d at 672.  As discussed supra, Defendant persuasively argues that no private

individual would want documents that outline their medical conditions, diagnoses, and treatment

plans to be placed in the public eye.  And as discussed with regard to Docket Number 73-73,

medical providers themselves also have privacy interests at stake.  The knowledge that

statements made during patient treatment could later be made visible to the public at large, may

change how medical personnel go about their daily jobs.  See Becerra, 138 S.Ct. at 2364.

Because of the privacy concerns for non-parties and medical providers, in addition to the

potential chilling affect that the prospect of public disclosure could have on medical providers as

they formulate treatment plans, Defendant has demonstrated that the "interest in secrecy" here is

great.  See Avandia, 924 F.3d at 672.  The Court further finds that Defendant has demonstrated

that the disclosure of non-party medical information, namely family histories, treatment plans,

physical examination results, and other intensely personal information contained in Docket

Numbers 73-75 through 73-78 "will work a clearly defined and serious injury" both to Defendant

and its employees, as well as to the non-parties to whom Defendant provides care.  See id.; see

also Davis, 2021 WL 4902333, at *4 (discussing how non-parties are injured when confidential

medical records are disclosed); Vnuk, 2015 WL 4984974, at *7 (discussing the duty of

healthcare providers to protect patient confidential medical information).  Accordingly, with

regard to Docket Numbers 73-75 through 73-78, the Court is persuaded that Defendant has met

its burden to demonstrate that its interest in secrecy outweighs the presumptive public right of access to these exhibits.

However, while "[r]edactions are the most narrowly tailored way" to balance the privacy interests implicated and the public's right to access the records pertinent to the legal claim being heard, see Davis, 2021 WL 4902333, at *6, there are circumstances where redactions are insufficient to protect the privacy interests of non-parties. This is such an instance. The Court finds that, as it pertains to Docket Numbers 73-75 through 73-78, the wholesale sealing of each exhibit is the most narrowly-tailored way to protect non-parties confidential medical information. Cf. Wartluft v. Milton Hershey Sch. & Sch. Tr., No. 16-cv-02145, 2020 WL 1124771, at *6 (M.D. Pa. Mar. 6, 2020) (finding that redaction is more appropriate when the court finds that specific redactions as opposed to wholesale sealing would sufficiently protect the implicated privacy interests). Each of these exhibits contains detailed medical histories, illness reports, notes of conversations between physicians and patients, and medical assessments/care plans. Accordingly, the redaction of all of said information is tantamount to the wholesale sealing of the exhibits and the Court will retain Docket Numbers 73-75 through 73-78 under seal on the docket of this matter.[5]

_____

[5] As stated supra at note 4, Avandia instructs that, if a district court finds that any documents merit continued sealing under the common law right of access, it "should also consider the parties' arguments regarding the First Amendment right of public access." See Avandia, 924 F.3d at 680. Defendant did not address the First Amendment standard in its Memorandum of Law in Support of its Motion for Leave to File Under Seal (Doc. No. 72-1), its response to the Court's show cause Order (Doc. No. 83), or in its subsequent Memorandum of Law in Support of its Motion to Seal (Doc. No. 89). Accordingly, in addressing Defendant's sealing requests, with regard to each of the exhibits ordered sealed by the Court upon its assessment of the common law right of access to judicial records, the Court will assume that the First Amendment right of public access attaches to those exhibits. Considering this Court's narrowly tailored approach of favoring redaction over wholesale sealing, except in this instance as it pertains exclusively to Docket Numbers 73-75 through 73-78, the Court finds that Defendant can meet its burden to satisfy the First Amendment's rigorous standard. The Court is guided by the historical

    **3.**      **Docket Numbers 73-29, 73-33, 73-34, 73-37, 73-38, 73-42, 73-43, 73-44, 73-45, 73-46, 73-47, 73-48, 73-49, 73-50, 73-51, 73-53, 73-54, 73-55, 73-56, 73-58, 73-59, 73-60, 73-62, 73-63, 73-64, 73-65, 73-66, 73-68, 73-69, 73-71, 73-72, 73-73, 73-80, 73-81, 73-85, 73-86, 73-87, 73-89, and 80-4 at 34[6]**

Defendant next argues that thirty-nine (39) exhibits, which it labels the "CCC Exhibits," should be sealed from the public docket.  (Doc. Nos. 83 at 8; 89 at 8.)   The CCC Exhibits are wide-ranging.  Contained within them are evaluations of Plaintiff's performance as a medical resident, email correspondence between members of the CCC, correspondence between Plaintiff and individual members of the CCC, as well as CCC meeting minutes that discuss the CCC's plans to handle the remediation and continued supervision of medical residents.

In support of its sealing request, Defendant explains that the CCC Exhibits contain "numerous unredacted evaluations, remediation plan documents, and other documents and communications reviewed or sent between members of the Core Competency Committee." (Doc. No. 83 at 8.)  Defendant cites the PRPA privilege, arguing that the "Medical Center is obligated to maintain the confidentiality of [these] documents."  (Id.)  Defendant posits that in enacting the PRPA, the legislature intended to "foster candor and frankness among review committees."  (Doc. No. 89 at 9.)  Defendant emphasizes that if "this Court were to unseal these

---

recognition within this circuit that confidential medical information merits protection from public dissemination.  See Westinghouse Elec. Corp., 638 F.2d at 577 (describing the importance of protecting intimate personal health information); see also Davis, 2021 WL 4902333, at *6–7 (discussing the importance of keeping confidential medical information off the public docket); Wartluft, 2019 WL 5394575, at *6 (highlighting the appropriateness of redaction to prevent dissemination of non-party confidential medical information).

[6] Here, Defendant improperly cites the exhibit numbers.  When Defendant filed its motion for summary judgment, it also filed its brief in support as an attachment to said motion.  See (Doc. No. 73-1).  The certificate of non-concurrence (73-2), the proposed order (73-3), and the affidavit of service (73-4) were also filed simultaneously, but Defendant did not account for this when discussing the exhibits that it argues should remain sealed.  Accordingly, because Defendant did not name these exhibits, leaving the Court only able to identify them by their docket numbers, the Court felt it important to highlight the discrepancy here.

confidential documents, it would frustrate the legislature's intent . . . ."  (Id.)  Defendant further

explains that, when the CCC meets, it reviews "the progress of all current resident-physicians" in

evaluating if those residents have met the "milestones of training."  (Id.)  To that end, Defendant

argues that public disclosure of the information contained in the CCC Exhibits would inhibit its

ability to effectively operate its Medical Residency program.  (Id.)

       The Court has undertaken an exhaustive review of each document that Defendant seeks

to seal.  The listed exhibits include emails and memoranda that discuss Plaintiff's remediation

plan, the CCC's broader deliberations, as well as documents used by the CCC to determine

whether Plaintiff met the milestones required by the medical Residency Program.  Several

documents contain confidential non-party medical information.[7]

       As discussed more fully supra, Avandia requires a party seeking to overcome the

presumptive common law right of access to demonstrate both (1) "that the material is the kind of

information that courts will protect" and (2) "that disclosure will work a clearly defined and

serious injury to the party seeking closure."  See Avandia, 924 F.3d at 672 (cleaned up).  The

Court finds that Defendant has demonstrated that several of the CCC Exhibits contain non-party

confidential medical information, which is "the kind of information that courts will protect."  See

id.  Specifically, Docket Numbers 73-69, 73-71, and 73-73 contain non-party confidential

medical information.[8]  The Court further finds that Defendant has shown that the public

dissemination of this non-party confidential medical information would work a "clearly defined

and serious injury" both to Defendant as it seeks to protect patient privacy, and to the non-parties

---

[7]  The table at the end of this section details each exhibit and the nature of the Court's findings
regarding the privacy interests implicated therein.

[8]  Docket Number 73-73 was also discussed supra.  It was classified by Defendant as both a
"Patient Exhibit" and "CCC Exhibit."  (Doc. No. 89 at 5, 8.)

to whom Defendant provides care.  See id.; see also Westinghouse Elec. Corp., 638 F.2d at 577

(discussing the importance of protecting intimate personal health information); Davis, 2021 WL

4902333 at *4 (discussing how non-parties are injured when confidential medical records are

disclosed).  Accordingly, with regard to Docket Numbers 73-69, 73-71, and 73-73, the Court is

persuaded that Defendant has met its burden to demonstrate that its interest in secrecy outweighs

the presumptive public right of access to these exhibits such that the Court will permit Defendant

to file redacted versions of said exhibits that remove non-party confidential medical information

contained therein.[9]  As discussed more fully supra, the Court concludes that it is more

appropriate to require Defendant to redact the non-party confidential medical information as

opposed to retaining the entirety of Docket Numbers 73-69, 73-71, and 73-73 under seal, as

requested by Defendant.  See Teva Pharms. Indus. Ltd., 2023 WL 1100995, at *7 (finding that

redactions that are limited in scope are preferable to sealing).  Accordingly, the Court will retain

Docket Numbers 73-69, 73-71, and 73-73 temporarily under seal on the docket of this matter

---

[9]  As discussed supra, Avandia instructs that, if a district court finds that any documents merit
continued sealing under the common law right of access, it "should also consider the parties'
arguments regarding the First Amendment right of public access."  See Avandia, 924 F.3d at
680.  Defendant did not address the First Amendment standard in its Memorandum of Law in
Support of its Motion for Leave to File Under Seal (Doc. No. 72-1), its response to the Court's
show cause Order (Doc. No. 83), or in its subsequent Memorandum of Law in Support of its
Motion to Seal (Doc. No. 89).  Accordingly, in addressing Defendant's sealing requests, with
regard to each of the exhibits ordered sealed by the Court upon its assessment of the common
law right of access to judicial records, the Court will assume that the First Amendment right of
public access attaches to those exhibits.  Considering this Court's narrowly tailored approach of
favoring redaction over wholesale sealing, the Court finds that Defendant can meet its burden to
satisfy the First Amendment's rigorous standard with regard to Docket Numbers 73-69, 73-71,
and 73-73.  The Court is guided by the historical recognition within this circuit that confidential
medical information merits protection from public dissemination.  See Westinghouse Elec. Corp.,
638 F.2d at 577 (describing the importance of protecting intimate personal health information);
see also Davis, 2021 WL 4902333, at *6–7 (discussing the importance of keeping confidential
medical information off the public docket); Wartluft, 2019 WL 5394575, at *6 (highlighting the
appropriateness of redaction to prevent dissemination of non-party confidential medical
information).

while affording Defendant the opportunity to file on the Court's docket versions of these documents redacted to remove non-party confidential medical information.

However, upon review of the remaining thirty-six (36) "CCC Exhibits"—Docket Numbers 73-29, 73-33, 73-34, 73-37, 73-38, 73-42, 73-43, 73-44, 73-45, 73-46, 73-47, 73-48, 73-49, 73-50, 73-51, 73-53, 73-54, 73-55, 73-56, 73-58, 73-59, 73-60, 73-62, 73-63, 73-64, 73-65, 73-66, 73-68, 73-72, 73-80, 73-81, 73-85, 73-86, 73-87, 73-89, and 80-4 at 34—the Court is unpersuaded that Defendant has met its burden to demonstrate that its interest in secrecy outweighs the presumption of public access to these judicial records.  These exhibits do not contain any confidential non-party medical information, nor any other "kind of information that courts will protect."  See Avandia, 924 F.3d at 672.  Further, even if the Court assumes that these exhibits contain such information, Defendant has not met its burden to demonstrate that the disclosure of the information contained therein "will work a clearly defined and serious injury" to Defendant or any of the non-parties to whom Defendant provides medical care.  See id.  The Court concludes that Defendant has failed to overcome the presumptive right of access to the material contained in these thirty-six exhibits.  Accordingly, the Court will instruct the Clerk of Court to unseal these exhibits in their entirety.  The table that follows summarizes the Court's conclusions regarding the "CCC Exhibits."

| Document Number | Brief Description | Holding |
|---|---|---|
| 73-29 | Evaluation of Plaintiff | Court will unseal the document in its entirety. |
| 73-33 | Notes of Meeting Between Plaintiff and Dr. Nicole Swallow | Court will unseal the document in its entirety. |
| 73-34 | E-Mail by Dr. Britt Marshall Discussing Plaintiff | Court will unseal the document in its entirety. |
| 73-37 | Follow Up Note to Plaintiff from Dr. Nicole Swallow | Court will unseal the document in its entirety. |
| 73-38 | E-Mail Correspondence Between Plaintiff and Dr. Nicole Swallow | Court will unseal the document in its entirety. |
| 73-42 | CCC Meeting Minutes (12/12/17) | Court will unseal the |

| | | document in its entirety. |
|---|---|---|
| 73-43 | Evaluation of Plaintiff | Court will unseal the document in its entirety. |
| 73-44 | Evaluation of Plaintiff | Court will unseal the document in its entirety. |
| 73-45 | Evaluation of Plaintiff | Court will unseal the document in its entirety. |
| 73-46 | Evaluation of Plaintiff | Court will unseal the document in its entirety. |
| 73-47 | Evaluation of Plaintiff | Court will unseal the document in its entirety. |
| 73-48 | Evaluation of Plaintiff | Court will unseal the document in its entirety. |
| 73-49 | Evaluation of Plaintiff | Court will unseal the document in its entirety. |
| 73-50 | CCC Follow Up Note Signed by Plaintiff | Court will unseal the document in its entirety. |
| 73-51 | CCC Meeting Minutes (12/12/17) | Court will unseal the document in its entirety. |
| 73-53 | CCC Follow Up Note Signed by Plaintiff | Court will unseal the document in its entirety. |
| 73-54 | CCC Warning Letter to Plaintiff (12/14/17) | Court will unseal the document in its entirety. |
| 73-55 | E-Mail Correspondence Between Plaintiff and Dr. Nicole Swallow | Court will unseal the document in its entirety. |
| 73-56 | Email from Plaintiff to Dr. Swallow (12/17/17) | Court will unseal the document in its entirety. |
| 73-58 | Email Correspondence Between Dr. DeWaters and Dr. Harris | Court will unseal the document in its entirety. |
| 73-59 | Evaluation of Plaintiff | Court will unseal the document in its entirety. |
| 73-60 | Email Correspondence Between Chiefs Discussing Plaintiff's Remediation Plan | Court will unseal the document in its entirety. |
| 73-62 | Evaluation of Plaintiff | Court will unseal the document in its entirety. |
| 73-63 | Evaluation of Plaintiff | Court will unseal the document in its entirety. |
| 73-64 | Evaluation of Plaintiff | Court will unseal the document in its entirety. |
| 73-65 | E-Mail Summarizing Remediation Plan Sent by Dr. Swallow | Court will unseal the document in its entirety. |
| 73-66 | E-Mail from Dr. Swallow to Plaintiff | Court will unseal the document in its entirety. |
| 73-68 | Clinical Reasoning Assessment of Plaintiff | Court will unseal the document in its entirety. A vague reference to a |

|  |  | patient contains no identifying information and thus the Court will not permit redaction. |
|---|---|---|
| 73-69 | Clinical Reasoning Assessment of Plaintiff | Defendant can rebut common law presumption insofar as Defendant may file an appropriately redacted version of the document. |
| 73-71 | E-Mail from Dr. Ryan Munyon Discussing Clinical Case | Defendant can rebut common law presumption insofar as Defendant may file an appropriately redacted version of the document. |
| 73-72 | E-Mail From Dr. Munyon Discussing Fake Hypothetical Patient | Court will unseal the document in its entirety. |
| 73-73 | E-Mail Correspondence Between Dr. James Kogut, Dr. Ashley Snyder, and the Chief Residents | Defendant can rebut common law presumption insofar as Defendant may file an appropriately redacted version of the document. |
| 73-80 | Evaluation of Plaintiff | Court will unseal the document in its entirety. |
| 73-81 | Notes of Meeting Between Plaintiff and Dr. Swallow | Court will unseal the document in its entirety. |
| 73-85 | E-Mail Sent by Dr. DeWaters Discussing Plaintiff's Performance | Court will unseal the document in its entirety. |
| 73-86 | Meeting Minutes of Ad Hoc CCC Meeting Taken by Dr. Swallow | Court will unseal the document in its entirety. |
| 73-87 | Letter of Termination Addressed to Plaintiff | Court will unseal the document in its entirety. |
| 73-89 | E-Mail Correspondence Between CCC Members Regarding Plaintiff's Appeal of His Termination | Court will unseal the document in its entirety. |
| 80-4 at 34 | CCC Notes | Court will unseal the document in its entirety. |

4.    **Docket Numbers 73-6, 73-9, 73-14, 73-25, 73-27, 73-30, 73-31, 73-61, 73-70, 73-74, and 80-5 at 293–331 – The Deposition Transcripts**

The Court next turns to Defendant's arguments in favor of sealing the depositions of

Plaintiff, Dr. Nicole Swallow, Dr. Edward Bollard, Dr. Britt Marshall, Dr. Samantha Willer,[10]

Dr. James Kogut, Dr. Ami DeWaters, Dr. Ryan Munyon, Dr. Jed Gonzalo, Dr. Ashley Snyder,

and Dr. Nasrollah Ghahramani.  These depositions discuss Defendant's Residency Program, as

well as Plaintiff's performance in said program.  See (Doc. Nos. 73-6, 73-9, 73-14, 73-25, 73-27,

73-30, 73-31, 73-61, 73-70, 73-74, 80-5 at 293–331).  Defendant labels this set of documents the

"Deposition Exhibits."

        Defendant argues that the Deposition Exhibits should remain sealed in their entirety.

(Doc. No. 83 at 9, 89 at 11.)  Defendant maintains that "[t]hroughout these transcripts . . .

Plaintiff and non-party fact witnesses provide substantial testimony relating to the non-party

patients."  (Doc. No. 83 at 9.)  Defendant maintains that it "seek[s] to uphold its duty to its

patients and its obligations under state and federal law by maintaining the confidentiality of these

documents."  (Doc. No. 83 at 9.)  Defendant argues that "intertwined throughout the transcripts

is substantial testimony from non-party fact witnesses relating to Plaintiff's patient care

evaluations, remediation plan, and CCC proceedings . . . ."  (Id.)  Defendant also cites the PRPA

privilege and the importance of keeping peer review documents confidential.  (Id.)

        The Court has reviewed each deposition transcript and concludes that five transcripts

contain references to non-party confidential medical information, which is the "kind of

information that courts will protect."  See Avandia, 924 F.3d at 672.  Specifically, Docket

Numbers 73-6, 73-9, 73-14, 73-27, and 73-74 contain such information.  Pertaining specifically

to those exhibits, and as discussed more fully supra, Defendant has persuasively demonstrated

that disclosure of confidential non-party medical information "will work a clearly defined and

serious injury" see id., both to Defendant and to the non-parties to whom Defendant provides

---

[10]  Dr. Willer's statement, while classified by Defendant as one of the "Deposition Exhibits," is
in the form of a sworn affidavit.

medical care, namely forcing Defendant to divulge confidential medical information pertaining to individuals who did not consent to the release of said information.  See Davis, 2021 WL 4902333 at *4 (discussing how non-parties are injured when confidential medical records are disclosed).  However, the Court concludes that it is more appropriate to require Defendant to redact the non-party confidential medical information from Docket Numbers 73-6, 73-9, 73-14, 73-27, and 73-74 as opposed to retaining them entirely under seal, as requested by Defendant.  See Teva Pharms. Indus. Ltd., 2023 WL 1100995, at *7 (finding that redactions that are limited in scope are preferable to wholesale sealing); see also McCowan, 2021 WL 3737204, at *4 (stating that "redaction only marginally affects the public's right to access materials filed in relation to judicial proceedings").

        In considering the foregoing, because Defendant fails to demonstrate that the six remaining Deposition Exhibits—Docket Numbers 73-25, 73-30, 73-31, 73-61, 73-70, and 80-5 at 293–331—contain more than opaque or vague references to non-party confidential medical information, or any other "kind of information that courts will protect,"  see Avandia, 924 F.3d at 672, the Court concludes that Defendant has failed to overcome the presumptive right of public access to these exhibits, and the Court will instruct the Clerk of Court to unseal those exhibits. Accordingly, the Court will temporarily retain Docket Numbers 73-6, 73-9, 73-14, 73-27, and 73-74 under seal on the docket of this matter while affording Defendant the opportunity to file on the Court's docket redacted versions which remove the non-party confidential medical information contained therein.[11]

---

[11]  As discussed supra, Avandia instructs that, if a district court finds that any documents merit continued sealing under the common law right of access, it "should also consider the parties' arguments regarding the First Amendment right of public access."  See Avandia, 924 F.3d at 680.  Defendant did not address the First Amendment standard in its Memorandum of Law in Support of its Motion for Leave to File Under Seal (Doc. No. 72-1), its response to the Court's

**B.    Defendant's Motion to Seal its Reply in Further Support of the Motion for Summary Judgment (Doc. No. 88)**

Defendant's final sealing request pertains to its Reply Brief in Further Support of its Motion for Summary Judgment and related filings.  (Doc. No. 88.)  The Reply Brief is thirty-eight (38) pages, containing responses to Plaintiff's arguments opposing summary judgment. (Doc. No. 89-1), and attaching "Exhibit A," which contains Plaintiff's EEOC Charge of Discrimination  (Doc. No. 89-2).  Lastly, Defendant provisionally filed under seal one hundred and forty-five (145) pages of unpublished opinions.  (Doc. No. 89-3.)

Defendant maintains that its Reply Brief in Further Support of the Motion for Summary Judgment and related filings should be kept under seal, because they include a "detailed discussion of the reasons for Plaintiff's dismissal."  (Id. at 12.)  Defendant repeats many of the arguments asserted in its initial Motion to Seal its Motion for Summary Judgment, specifically with reference to its brief in support of said motion, discussed supra.  Defendant reiterates its "duty to its patients and obligations under state and federal law." (Id. at 12.)  Defendant also claims that unsealing its Reply Brief such that it is accessible on "the public docket would

show cause Order (Doc. No. 83), or in its subsequent Memorandum of Law in Support of its Motion to Seal (Doc. No. 89).  Accordingly, in addressing Defendant's sealing requests, with regard to each of the exhibits ordered sealed by the Court upon its assessment of the common law right of access to judicial records, the Court will assume that the First Amendment right of public access attaches to those exhibits.  Considering this Court's narrowly tailored approach of favoring redaction over wholesale sealing, the Court finds that Defendant can meet its burden to satisfy the First Amendment's rigorous standard with regard to Docket Numbers 73-6, 73-9, 73-14, 73-27, and 73-74.  The Court is guided by the historical recognition within this circuit that confidential medical information merits protection from public dissemination.  See Westinghouse Elec. Corp., 638 F.2d at 577 (describing the importance of protecting intimate personal health information); see also Davis, 2021 WL 4902333, at *6–7 (discussing the importance of keeping confidential medical information off the public docket); Wartluft, 2019 WL 5394575, at *6 (highlighting the appropriateness of redaction to prevent dissemination of non-party confidential medical information).

27

undermine the protections afforded by the PRPA privilege and defeat the legislature's intent for the statutory privilege." (Id. at 11.)

For similar reasons as discussed in Section III.A.1 supra, the Court finds that Defendant has failed to meet its burden to show that its interest in secrecy outweighs the presumption of public access to judicial records as to its Reply Brief and related filings.  Defendant asserts only "[b]road allegations of harm, bereft of specific examples or articulated reasoning," with references to general duties that Defendant claims to owe toward patients.  See In re Cendant Corp., 260 F.3d at 194.  Defendant fails to provide specific information about which portions of its Reply Brief would be damaging to its ability to provide medical care while complying with federal and state confidentiality requirements.  The argument authored by Defendant is "broad, vague, and conclusory" which is "insufficient to overcome the presumption of public access." See Avandia, 924 F.3d at 678.  The Court is unpersuaded that Defendant has demonstrated that its Reply Brief and related filings contain "the kind of information that courts will protect," or that public disclosure of said filings "will work a clearly defined and serious injury" to it.  See id. at 672.

Additionally, Defendant's PRPA argument, both as it relates to the invocation of the peer review privilege and for the persuasive value of the Pennsylvania legislature's judgment that these materials should not be discoverable or used as trial evidence, also fails with regard to Defendant's Reply Brief.  As discussed at length supra, the PRPA does not govern the Court's Avandia inquiry because there is no federal common law peer review privilege.  See Weiss, 231 F.R.D. at 205.

Looking at the PRPA for its persuasive value, the Court is similarly unpersuaded that this Pennsylvania statutory privilege supports a finding here that the references to the CCC contained

in Defendant's Reply Brief are "the kind of information that courts will protect."  See Avandia, 924 F.3d at 672.  The CCC is mentioned in Defendant's Reply Brief with only a handful of references to the "proceedings and records" of the committee itself.  See 63 Pa. C.S. § 425.4. The Reply Brief discusses how the "[CCC] raised concerns about Plaintiff's recent performance" and that the "[CCC] felt that the Plaintiff presented a risk to patients."  (Doc. No. 89-1 at 8.) Defendant's Reply Brief discusses, at a very broad level, the CCC's conclusions and past resident evaluations.  (Id. at 19.)  The CCC minutes are briefly mentioned in the context of spoilation.  (Id. at 34.)  However, even considering the legislature's judgment that peer review materials merit protection from the civil discovery and trial process in the Commonwealth of Pennsylvania, the Court is unpersuaded by Defendant's conclusory argument that the opaque references to CCC materials contained in Defendant's Reply Brief  "will work a clearly defined and serious injury" to Defendant, its employees, or the non-parties to whom Defendant provides medical care.  See Avandia, 924 F.3d at 672.  Accordingly, the Court will direct the Clerk of Court to unseal Defendant's Reply Brief in Further Support of its Motion for Summary Judgment and the related filings.[12]  The Court next turns to an examination of Plaintiff's sealing requests.

### C.    Plaintiff's Motion for Leave to File Documents Under Seal (Doc. No. 79)/Memorandum of Law in Support of Plaintiff's Motion to Seal Via Redaction Certain Documents Filed in Response to Summary Judgment (Doc. No. 90)

Plaintiff filed his initial motion to seal in connection with his response to Defendant's summary judgment motion, noting that "many of the documents referenced in Defendant's

---

[12]  Notably, Defendant filed a motion for leave to file a Sur Sur Reply (Doc. No. 95), a proposed Order to that effect (Doc. No. 95-1), a brief in support of its motion for leave (Doc. No. 95-2), the Sur Sur Reply Brief itself (Doc. No. 95-3), as well as forty-two pages of relevant judicial opinions (Doc. No. 95-4), all provisionally under seal of the docket of this matter.  Defendant authors no arguments in favor of keeping these documents under seal.  Accordingly, the Court will direct the Clerk of Court to unseal these documents in their entirety.

Summary Judgment Motion . . . are also referenced in Plaintiff's Response." (Doc. No. 79-1 at 2–3.) Plaintiff accordingly filed his opposition to summary judgment provisionally under seal pending the Court's ruling as to Defendant's sealing requests. See (id. at 2). In the brief accompanying Plaintiff's initial motion to seal, he requested the sealing of ten records related to his medical and mental health treatment, in addition to asking the Court to seal third party medical treatment records. (Id. at 3–5.) However, in response to the Court's August 14, 2023 Show Cause Order (Doc. No. 81), Plaintiff filed a memorandum wherein he greatly narrowed his sealing request (Doc. No. 90). Plaintiff offered no argument in support of sealing his brief in opposition to summary judgment. Instead, Plaintiff proffered arguments in favor of redacting three exhibits on the docket of this matter. See (id.). Each will be examined in turn.

### 1. Docket Number 80-1 at 144

Docket Number 80-1 at 144 contains the second page of an Outpatient Note that discusses Plaintiff's medical and social history, physical examination, and treatment plan. See (Doc. No. 80-1 at 144). The document also contains a description of Plaintiff's Family History, which includes references to his mother and grandmother. (Id.) This Note was authored by Dr. Britt Marshall, and hereinafter will be referred to as the "Marshall Note."

Plaintiff argues that the Marshall Note should be unsealed on the public docket with redactions to the "Family History" portion. Plaintiff maintains that the Marshall Note includes a "mental health diagnosis of [Plaintiff's] mother and grandmother." (Doc. No. 90 at 3.) Plaintiff observes that neither his mother nor grandmother are parties to the case. (Id.) Plaintiff argues that, in addition to interfering with Plaintiffs' relationships with his family members, this information entering the public square could "stigmatize family members socially." (Id.) Plaintiff "requests that the sentence following the heading 'Family History' . . . be redacted

before placement on the public docket."  (Id. at 4.)

Upon careful review of the Marshall Note, the Court finds that Plaintiff has met his burden to overcome the presumption of public access such that the Court will permit Plaintiff to file a redacted version of the Marshall Note wherein he can make the requested redactions to the "Family History" section.  Plaintiff has made a sufficient showing under Avandia that the personal medical information of non-parties contained in the Marshall Note is the "kind of information that courts will protect."  See Avandia, 924 F.3d at 672.  As discussed more fully supra, courts in this circuit have overwhelmingly recognized the importance of protecting non-party confidential medical information from public dissemination.  See Westinghouse Elec. Corp., 638 F.2d at 577 (discussing the importance of protecting intimate personal health information); Davis, 2021 WL 4902333, at*6–7 (holding that "medical information" more broadly is the "kind of information that courts will protect"); see also In re Search Warrant, 810 F.2d at 71 (discussing the legitimate privacy interests that individuals retain in their own medical records).  Further, the Court concludes that Plaintiff's brief sufficiently explains why the revelation of this information "will work a clearly defined and significant injury" to Plaintiff and his family members, see Avandia, 924 F.3d at 672, namely, the stigmatization of his family members socially, as well as the general harms that result from the confidential personal medical information of non-parties being made available for public viewership without their permission. See Davis, 2021 WL 4902333 at *4 (discussing how non-parties are injured when confidential medical records are disclosed).  Finally, as discussed more fully supra, redactions are preferred to the wholesale sealing of documents.  See Teva Pharms. Indus. Ltd., 2023 WL 1100995, at *7 (finding that proposed redactions that are limited in scope are preferable to the wholesale sealing

of documents).[13]  Accordingly, the Court will temporarily retain the Marshall Note under seal

while requiring Plaintiff to file on the Court's docket a version of the Marshall Note redacted to

remove confidential non-party medical information.[14]

### 2.    Docket Number 80-1 at 147–50

Docket Number 80-1 at 147–50 is a Psychiatric Evaluation of Plaintiff written by Dr.

Frank Muñoz.  (Doc. No. 80-1 at 147–50.)  The evaluation discusses Plaintiff's family history,

personal and developmental history, treatment plan, and body measurements.  (Id.)  This exhibit

will hereinafter be referred to as the "Muñoz Evaluation."

Plaintiff argues that the Muñoz Evaluation should be unsealed on the public docket with

several portions redacted, citing content that reveals deeply personal information which "is not

necessary to litigate this case."  (Doc. No. 90 at 5.)  Plaintiff explains that the information "does

---

[13]  As discussed supra, Avandia instructs that, if a district court finds that any documents merit
continued sealing under the common law right of access, it "should also consider the parties'
arguments regarding the First Amendment right of public access."  See Avandia, 924 F.3d at
680.  Plaintiff offered limited briefing on the First Amendment question in his Memorandum of
Law in Support of his Motion to Seal Documents (Doc. No. 79-1) and his Memorandum of Law
in Support of his Motion to Seal Via Redaction Certain Documents Filed in Response to
Summary Judgment (Doc. No. 90).  Accordingly, in addressing Plaintiff's sealing requests, with
regard to each of the exhibits ordered sealed by the Court upon its assessment of the common
law right of access to judicial records, the Court will assume that the First Amendment right of
public access attaches to those exhibits.  Considering this Court's narrowly tailored approach of
favoring redaction over wholesale sealing, the Court finds that Plaintiff can meet his burden to
satisfy the First Amendment's rigorous standard with regard to the Marshall Note.  The Court is
guided by the historical recognition within this circuit that confidential medical information
merits protection from public dissemination.  See Westinghouse Elec. Corp., 638 F.2d at 577
(describing the importance of protecting intimate personal health information); see also Davis,
2021 WL 4902333, at *6–7 (discussing the importance of keeping confidential medical
information off the public docket); Wartluft, 2019 WL 5394575, at *6 (highlighting the
appropriateness of redaction to prevent dissemination of non-party confidential medical
information).

[14]  Plaintiff did not file separate exhibits, but rather docketed his filings in opposition to summary
judgment as seven separate files.  For example, Docket Number 80-1 contains exhibits one (1)
through thirty (30).  In granting Plaintiff's motion for leave to file under seal in part, the Court
will strike Docket Number 80-1 in its entirety once Plaintiff refiles Docket Number 80-1 with the
appropriate redactions.

not implicate any proof or defense and it is not information that warrants public disclosure." (Id.)  Plaintiff also argues that the exposure of this sensitive information could hurt his relationship with family members.  (Id.)  Plaintiff further requests that diagnosis information for his mother be redacted.  (Id. at 5–6.)

Upon review of the Muñoz Evaluation, the Court finds that Plaintiff has met his burden to overcome the presumption of public access with regard to Docket Number 80-1 at 147–50 such that the Court will permit Plaintiff to file a version of the Muñoz Evaluation with the requested redactions to remove the non-party confidential medical information contained therein.  As discussed supra, the Court finds that Plaintiff has made a sufficient showing under Avandia that the personal confidential medical information of non-parties is the "kind of information that courts will protect."  See Avandia, 924 F.3d at 672.  Further, with reference to his mother's diagnosis information, Plaintiff has sufficiently articulated why the public availability of this information "will work a clearly defined and significant injury" to both Plaintiff and his mother. See id., 924 F.3d at 672; see also Davis, 2021 WL 4902333, at *4 (discussing how non-parties are injured when confidential medical records are disclosed).

As for the details of Plaintiff's personal psychiatric history and treatment plan contained in the Muñoz Evaluation, the Court also finds that Plaintiff has demonstrated that such personal confidential medical information is the "kind of information that courts will protect."  See Avandia, 924 F.3d at 672.  In the Court's view, despite the fact that this information pertains to a party to the instant action as opposed to a non-party, the consensus that confidential medical information is not for public viewership is inherent in the authority from this circuit, and supports the Court's conclusion that this is the "kind of information that courts will protect."  See id.; Westinghouse Elec. Corp., 638 F.2d at 577 (discussing the importance of protecting intimate

personal health information); <u>see also</u> <u>Davis</u>, 2021 WL 490233 at *6–7 (holding that "medical

information" more broadly is the "kind of information that courts will protect") (citing <u>Pahlavan</u>

<u>v. Drexel Univ. Coll. of Med.</u>, 438 F. Supp. 3d 404, 407 n.1 (E.D. Pa. 2020) (permitting

redactions of certain mental impressions made of the plaintiff by his therapists under the Avandia

<u>standard</u>)).  The Court further finds that Plaintiff has sufficiently demonstrated that should this

information about his personal medical history be available for public viewership, it "will work a

clearly defined and serious injury" to him, <u>see</u> <u>Avandia</u>, 924 F. 3d at 672, namely the involuntary

disclosure of deeply personal medical information.  As discussed <u>supra</u>, redactions are generally

preferable to the wholesale sealing of documents.  <u>See</u> <u>Teva Pharms. Indus. Ltd.</u>, 2023 WL

1100995, at *7.  Accordingly, the Court will retain Docket Number 80-1 at 147–50 temporarily

under seal on the docket of this matter while affording Plaintiff the opportunity to file on the

Court's docket a redacted version of the Muñoz Evaluation that removes both non-party

confidential medical information and Plaintiff's deeply personal medical information contained

therein.[15]

---

[15] <u>Avandia</u> instructs that, if a district court finds that any documents merit continued sealing
under the common law right of access, it "should also consider the parties' arguments regarding
the First Amendment right of public access."  <u>See</u> <u>Avandia</u>, 924 F.3d at 680.  Plaintiff offered
limited briefing on the First Amendment question in his Memorandum of Law in Support of his
Motion to Seal Documents (Doc. No. 79-1) and his Memorandum of Law in Support of his
Motion to Seal Via Redaction Certain Documents Filed in Response to Summary Judgment
(Doc. No. 90).  Accordingly, in addressing Plaintiff's sealing requests, with regard to each of the
exhibits ordered sealed by the Court upon its assessment of the common law right of access to
judicial records, the Court will assume that the First Amendment right of public access attaches
to those exhibits.  Considering this Court's narrowly tailored approach of favoring redaction over
wholesale sealing, the Court finds that Plaintiff can meet his burden to satisfy the First
Amendment's rigorous standard with regard to the Muñoz Evaluation.  The Court is guided by
the historical recognition within this circuit that confidential medical information merits
protection from public dissemination.  <u>See</u> <u>Westinghouse Elec. Corp.</u>, 638 F.2d at 577
(describing the importance of protecting intimate personal health information); <u>see also</u> <u>Davis</u>,
2021 WL 4902333, at *6–7 (discussing the importance of keeping confidential medical
information off the public docket); <u>Wartluft</u>, 2019 WL 5394575, at *6 (highlighting the

### 3.      Redactions to Docket Number 80-5 at 558, Tr. 70:17-70:21

Plaintiff's final sealing request pertains to four lines of Dr. Muñoz's deposition transcript ("Muñoz Deposition"), wherein Dr. Muñoz references personal information about Plaintiff's childhood abuse.  (Doc. No. 90 at 6.)  Plaintiff does not ask for any other portion of the deposition to be redacted.  Plaintiff maintains that the four referenced lines of the Muñoz Deposition contain "personal information about [Plaintiff]'s childhood abuse," and it follows that public disclosure of this information will result in a "clearly defined and serious injury" to Plaintiff.  (Id.)

With regard to the four referenced lines of the Muñoz Deposition, the Court is persuaded that Plaintiff has met his burden to demonstrate that his interest in secrecy outweighs the presumptive right of access to this exhibit such that the Court will permit Plaintiff to file a redacted version of the Muñoz Deposition that removes the personal confidential medical information within it.  As discussed supra, the Court finds that highly personal confidential medical information, even pertaining to a party to the above-titled action, is the "kind of information that courts will protect."  See Avandia, 924 F.3d at 672; see also Pahlavan , 438 F. Supp. 3d at 407 n.1 (permitting redactions of certain mental impressions made of the plaintiff by his therapists due to the "sensitive and confidential" nature of the content pursuant to Avandia). The Court further finds that Plaintiff has sufficiently demonstrated that, should information about his childhood abuse be available for public viewership, it "will work a clearly defined and serious injury" to him, see Avandia, 924 F.3d at 672, namely, the involuntary disclosure of sensitive personal information, unrelated to the above captioned action and closely tied to Plaintiff's personal medical and mental health care plans.  Furthermore, in balancing the

_____

appropriateness of redaction to prevent dissemination of non-party confidential medical information).

presumption of public access to judicial records and the privacy interests articulated by parties, the Court finds that redactions are preferred to the wholesale sealing of documents.  See Teva Pharms. Indus. Ltd., 2023 WL 1100995, at *7.  Accordingly, the Court will retain Docket Number 80-5 at 558, Tr. 70:17-70:21 temporarily under seal on the docket of this matter while affording Plaintiff the opportunity to file on the Court's docket a redacted version of the exhibit that removes the highly sensitive personal medical information contained within it.[16]

## IV.    CONCLUSION

For all the foregoing reasons, the Court will largely deny Defendant's Motion for Leave to File Under Seal its Motion for Summary Judgment but will grant the motion insofar as the Court will permit Defendant to file redacted versions of Docket Numbers 73-6, 73-9, 73-14, 73-27, 73-69, 73-71, 73-73, and 73-74, and will retain under seal Docket Numbers 73-75 through 73-78.  The Court will deny Defendant's Motion to Seal its Reply in Further Support of its Motion for Summary Judgment and related filings.  Additionally, the Court will largely deny

---

[16] Avandia instructs that, if a district court finds that any documents merit continued sealing under the common law right of access, it "should also consider the parties' arguments regarding the First Amendment right of public access."  See Avandia, 924 F.3d at 680.  Plaintiff offered limited briefing on the First Amendment question in his Memorandum of Law in Support of his Motion to Seal Documents (Doc. No. 79-1) and his Memorandum of Law in Support of his Motion to Seal Via Redaction Certain Documents Filed in Response to Summary Judgment (Doc. No. 90).  Accordingly, in addressing Plaintiff's sealing requests, with regard to each of the exhibits ordered sealed by the Court upon its assessment of the common law right of access to judicial records, the Court will assume that the First Amendment right of public access attaches to those exhibits.  Considering this Court's narrowly tailored approach of favoring redaction over wholesale sealing, the Court finds that Plaintiff can meet his burden to satisfy the First Amendment's rigorous standard with regard to the Muñoz Deposition.  The Court is guided by the historical recognition within this circuit that confidential medical information merits protection from public dissemination.  See Westinghouse Elec. Corp., 638 F.2d at 577 (describing the importance of protecting intimate personal health information); see also Davis, 2021 WL 4902333, at *6–7 (discussing the importance of keeping confidential medical information off the public docket); Wartluft, 2019 WL 5394575, at *6 (highlighting the appropriateness of redaction to prevent dissemination of non-party confidential medical information).

Plaintiff's Motion for Leave to File Documents Under Seal but will grant the motion insofar as it will permit Plaintiff to file redacted versions of the Marshall Note (Doc. No. 80-1 at 144), the Muñoz Evaluation (Doc. No. 80-1 at 147–50), and the Muñoz Deposition (Doc. No. 80-5 at 558, Tr. 70:17-70:21).  Finally, the Court will direct the Clerk of Court to unseal dozens of other exhibits provisionally filed under seal by both parties.[17]  An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania

---

[17]  The Court further observes that Plaintiff filed his motion (Doc. No. 91) for leave to file a Sur Reply Brief, a proposed order (Doc. No. 91-1), an accompanying brief in support of that motion (Doc. No. 91-2), as well as the Sur Reply brief itself  (Doc. No. 92) along with related attachments (Doc. Nos. 92-1 through 92-5) provisionally under seal of the docket of this matter. Because Plaintiff promulgates no argument in favor of keeping these documents under seal, the Court will direct the Clerk of Court to unseal these documents in their entirety.